(Slip Opinion) OCTOBER TERM, 2019 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BARTON *v.* BARR, ATTORNEY GENERAL

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 18–725. Argued November 4, 2019—Decided April 23, 2020

When a lawful permanent resident commits certain serious crimes, the Government may initiate removal proceedings before an immigration judge. 8 U. S. C. §1229a. If the lawful permanent resident is found removable, the immigration judge may cancel removal, but only if the lawful permanent resident meets strict statutory eligibility requirements. §§1229b(a), 1229b(d)(1)(B).

Over the span of 12 years, lawful permanent resident Andre Barton was convicted of state crimes, including a firearms offense, drug offenses, and aggravated assault offenses. An Immigration Judge found him removable based on his state firearms and drug offenses. Barton applied for cancellation of removal. Among the eligibility requirements, a lawful permanent resident must have "resided in the United States continuously for 7 years after having been admitted in any status." §1229b(a)(2). Another provision, the so-called stop-time rule, provides that a continuous period of residence "shall be deemed to end" when the lawful permanent resident commits "an offense referred to in section 1182(a)(2) . . . that renders the alien inadmissible to the United States under section 1182(a)(2)." §1229b(d)(1)(B). Because Barton's aggravated assault offenses were committed within his first seven years of admission and were covered by §1182(a)(2), the Immigration Judge concluded that Barton was not eligible for cancellation of removal. The Board of Immigration Appeals and the Eleventh Circuit agreed.

*Held*: For purposes of cancellation-of-removal eligibility, a §1182(a)(2) offense committed during the initial seven years of residence does not need to be one of the offenses of removal. Pp. 6–17.

(a) The cancellation-of-removal statute functions like a traditional

recidivist sentencing statute, making a noncitizen's prior crimes relevant to eligibility for cancellation of removal. The statute's text clarifies two points relevant here. First, cancellation of removal is precluded when, during the initial seven years of residence, the noncitizen "committed an offense referred to in section 1182(a)(2)," even if (as in Barton's case) the *conviction* occurred after the seven years elapsed. Second, the offense must "rende[r] the alien inadmissible" as a result. For crimes involving moral turpitude, the relevant category here, §1182(a)(2) provides that a noncitizen is rendered "inadmissible" when he is convicted of or admits the offense. §1182(a)(2)(A)(i).

As a matter of statutory text and structure, the analysis here is straightforward. Barton's aggravated assault offenses were crimes involving moral turpitude and therefore "referred to in section 1182(a)(2)." He committed the offenses during his initial seven years of residence and was later convicted of the offenses, thereby rendering him "inadmissible." Barton was, therefore, ineligible for cancellation of removal. Pp. 6–10.

(b) Barton's counterarguments are unpersuasive. First, he claims that the statute's structure supports an "offense of removal" approach. But §1227(a)(2) offenses—not §1182(a)(2) offenses—are ordinarily the basis for removal of lawful permanent residents. Therefore, Barton's structural argument falls apart. If he were correct, the statute presumably would specify offenses "referred to in section 1182(a)(2) *or section 1227(a)(2).*" By contrast, some other immigration law provisions do focus only on the offense of removal, and their statutory text and context support that limitation. See*, e.g.,* §§1226(a), (c)(1)(A), 1252(a)(2)(C).

Second, seizing on the statutory phrase "committed an offense referred to in section 1182(a)(2) . . . that renders the alien inadmissible to the United States under section 1182(a)(2)," §1229b(d)(1)(B), Barton argues that a noncitizen is rendered "inadmissible" when actually adjudicated as inadmissible and denied admission to the United States, something that usually cannot happen to a lawfully admitted noncitizen. But the statutory text employs the term "inadmissibility" as a status that can result from, *e.g.*, a noncitizen's (including a lawfully admitted noncitizen's) commission of certain offenses listed in §1182(a)(2). See, *e.g.,* §§1182(a)(2)(A)(i), (B). And Congress has made that status relevant in several statutory contexts that apply to lawfully admitted noncitizens such as Barton. In those contexts, a noncitizen faces immigration consequences from being convicted of a §1182(a)(2) offense even though the noncitizen is lawfully admitted and is not necessarily removable solely because of that offense. See, *e.g.,* §§1160(a)(1)(C), (a)(3)(B)(ii). Such examples pose a major hurdle for Barton's textual argument, and Barton has no persuasive answer.

Syllabus

Third, Barton argues that the Government's interpretation treats as surplusage the phrase "or removable from the United States under section 1227(a)(2) or 1227(a)(4)." But redundancies are common in statutory drafting. The Court has often recognized that sometimes the better overall reading of a statute contains some redundancy. And redundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text.

Finally, Barton argues alternatively that, even if inadmissibility is a status, and even if the offense that precludes cancellation of removal need not be one of the offenses of removal, a noncitizen must at least have been *capable of* being charged with a §1182(a)(2) inadmissibility offense as the basis for removal. Because the cancellation-of-removal statute is a recidivist statute, however, whether the offense that precludes cancellation of removal was charged or could have been charged as one of the offenses of removal is irrelevant. Pp. 10–17.

904 F. 3d 1294, affirmed.

KAVANAUGH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, ALITO, and GORSUCH, JJ., joined. SOTOMAYOR, J., filed a dissenting opinion, in which GINSBURG, BREYER, and KAGAN, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 18–725

ANDRE MARTELLO BARTON, PETITIONER *v.*
WILLIAM P. BARR, ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[April 23, 2020]

JUSTICE KAVANAUGH delivered the opinion of the Court.

Under the immigration laws, a noncitizen who is authorized to live permanently in the United States is a lawful permanent resident—also commonly known as a green-card holder. But unlike a U. S. citizen, a lawful permanent resident who commits a serious crime may be removed from the United States.

Andre Barton is a Jamaican national and a longtime lawful permanent resident of the United States. During his time in the United States, Barton has been convicted of state crimes on three separate occasions spanning 12 years. The crimes include a firearms offense, drug offenses, and aggravated assault offenses. By law, the firearms offense and the drug offenses each independently rendered Barton eligible for removal from the United States. In September 2016, the U. S. Government sought to remove Barton, and a U. S. Immigration Judge determined that Barton was removable.

Barton applied for cancellation of removal, a form of relief that allows a noncitizen to remain in the United States de-

spite being found removable. The immigration laws author-
ize an immigration judge to cancel removal, but Congress
has established strict eligibility requirements. See 8
U. S. C. §§1229b(a), (d)(1)(B). For a lawful permanent res-
ident such as Barton, the applicant for cancellation of re-
moval (1) must have been a lawful permanent resident for
at least five years; (2) must have continuously resided in
the United States for at least seven years after lawful ad-
mission; (3) must not have been convicted of an aggravated
felony as defined in the immigration laws; and (4) during
the initial seven years of continuous residence, must not
have committed certain other offenses listed in 8 U. S. C.
§1182(a)(2). If a lawful permanent resident meets those el-
igibility requirements, the immigration judge has discre-
tion to (but is not required to) cancel removal and allow the
lawful permanent resident to remain in the United States.

Under the cancellation-of-removal statute, the immigra-
tion judge examines the applicant's prior crimes, as well as
the offense that triggered his removal. If a lawful perma-
nent resident has ever been convicted of an aggravated fel-
ony, or has committed an offense listed in §1182(a)(2) dur-
ing the initial seven years of residence, that criminal record
will preclude cancellation of removal.[1] In that way, the
statute operates like traditional criminal recidivist laws,
which ordinarily authorize or impose greater sanctions on
offenders who have committed prior crimes.

In this case, after finding Barton removable based on his
state firearms and drug offenses, the Immigration Judge
and the Board of Immigration Appeals (BIA) concluded that

_____

[1] As the statute makes clear, and as we discuss below, *committing* a
§1182(a)(2) offense precludes cancellation of removal only if the offense
also "renders" the noncitizen inadmissible. See *infra*, at 10. Section
1182(a)(2) specifies what that means for each of its enumerated offenses.
For the offense at issue in this case, the noncitizen must also have been
convicted of or admitted the offense.

Barton was not eligible for cancellation of removal. Barton had committed offenses listed in §1182(a)(2) during his initial seven years of residence—namely, his state aggravated assault offenses in 1996. Barton's 1996 aggravated assault offenses were not the offenses that triggered his removal. But according to the BIA, and contrary to Barton's argument, the offense that precludes cancellation of removal need not be one of the offenses of removal. *In re Jurado-Delgado*, 24 I. & N. Dec. 29, 31 (BIA 2006). The U. S. Court of Appeals for the Eleventh Circuit agreed with the BIA's reading of the statute and concluded that Barton was not eligible for cancellation of removal. The Second, Third, and Fifth Circuits have similarly construed the statute; only the Ninth Circuit has disagreed.

Barton argues that the BIA and the Eleventh Circuit misinterpreted the statute. He contends that the §1182(a)(2) offense that precludes cancellation of removal must be one of the offenses of removal. We disagree with Barton, and we affirm the judgment of the U. S. Court of Appeals for the Eleventh Circuit.

I

Federal immigration law governs the admission of noncitizens to the United States and the deportation of noncitizens previously admitted. See 8 U. S. C. §§1182(a), 1227(a), 1229a.[2] The umbrella statutory term for being inadmissible or deportable is "removable." §1229a(e)(2).

A noncitizen who is authorized to live permanently in the United States is a lawful permanent resident, often known as a green-card holder. When a lawful permanent resident commits a crime and is determined by an immigration judge to be removable because of that crime, the Attorney General (usually acting through an immigration judge) may

———————

[2] This opinion uses the term "noncitizen" as equivalent to the statutory term "alien." See 8 U. S. C. §1101(a)(3).

cancel removal. §1229b(a). But the comprehensive immigration law that Congress passed and President Clinton signed in 1996 tightly cabins eligibility for cancellation of removal. See Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 110 Stat. 3009–546, 8 U. S. C. §1101 note.

For a lawful permanent resident, the cancellation-of-removal statute provides that an immigration judge "may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony." §1229b(a).[3]

The statute imposes one other requirement known as the "stop-time rule." As relevant here, the statute provides that a lawful permanent resident, during the initial seven years of residence, also cannot have committed "an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title." §1229b(d)(1)(B).

Andre Barton is a Jamaican national and a lawful permanent resident of the United States. In 1996, he was convicted in a Georgia court of a firearms offense stemming from an incident where Barton and a friend shot up the house of Barton's ex-girlfriend. In separate proceedings in 2007 and 2008, he was convicted in Georgia courts of state drug offenses. One case involved methamphetamine, and the other involved cocaine and marijuana.

————————
[3] The immigration laws impose a similar but even stricter set of eligibility requirements for noncitizens who are not lawful permanent residents. §1229b(b).

In 2016, the U. S. Government charged Barton with de-portability under 8 U. S. C. §1227(a)(2) based on the 1996 firearms offense and the 2007 and 2008 drug crimes. See §§1227(a)(2)(B)(i), (C). Barton conceded that he was removable based on his criminal convictions for the firearms of-fense and drug offenses, and an Immigration Judge found him removable.

Barton applied for cancellation of removal. All agree that Barton meets two of the eligibility requirements for cancel-lation of removal. He has been a lawful permanent resident for more than five years. And he has not been convicted of an "aggravated felony," as defined by the immigration laws.

The Immigration Judge concluded, however, that Barton had committed an offense listed in §1182(a)(2) during his initial seven years of residence. In 1996, 6½ years after his admission to this country, Barton committed aggravated assault offenses for which he was later convicted in a Geor-gia court. The Immigration Judge concluded that those ag-gravated assault offenses were covered by §1182(a)(2) and that Barton was therefore not eligible for cancellation of removal.

The Board of Immigration Appeals and the U. S. Court of Appeals for the Eleventh Circuit likewise concluded that Barton was not eligible for cancellation of removal. *Barton* v. *United States Atty. Gen.*, 904 F. 3d 1294, 1302 (2018). The key question was whether the offense that precludes cancellation of removal (here, Barton's 1996 aggravated assault offenses) must also be one of the offenses of removal.[4] The Board of Immigration Appeals has long interpreted the statute to mean that "an alien need not actually be charged and found inadmissible or removable on the applicable ground in order for the criminal conduct

---

[4] The term "offense of removal" describes the offense that was the ground on which the immigration judge, at the removal proceeding, found the noncitizen removable.

in question to terminate continuous residence in this country" and preclude cancellation of removal. *Jurado-Delgado*, 24 I. & N. Dec., at 31. In this case, the Eleventh Circuit likewise indicated that the §1182(a)(2) offense that precludes cancellation of removal need not be one of the offenses of removal. 904 F. 3d, at 1299–1300. And the Second, Third, and Fifth Circuits have similarly construed the statute. See *Heredia* v. *Sessions*, 865 F. 3d 60, 68 (CA2 2017); *Ardon* v. *Attorney General of United States*, 449 Fed. Appx. 116, 118 (CA3 2011); *Calix* v. *Lynch*, 784 F. 3d 1000, 1011 (CA5 2015).

But in 2018, the Ninth Circuit disagreed with those courts and with the BIA. The Ninth Circuit ruled that a lawful permanent resident's commission of an offense listed in §1182(a)(2) makes the noncitizen ineligible for cancellation of removal only if that offense was one of the offenses of removal. *Nguyen* v. *Sessions*, 901 F. 3d 1093, 1097 (2018). Under the Ninth Circuit's approach, Barton would have been eligible for cancellation of removal because his §1182(a)(2) offenses (his 1996 aggravated assault offenses) were not among the offenses of removal (his 1996 firearms offense and his 2007 and 2008 drug crimes).

In light of the division in the Courts of Appeals over how to interpret this statute, we granted certiorari. 587 U. S. ___ (2019).

## II
## A

Under the immigration laws, when a noncitizen has committed a serious crime, the U. S. Government may seek to remove that noncitizen by initiating removal proceedings before an immigration judge. If the immigration judge determines that the noncitizen is removable, the immigration judge nonetheless has discretion to cancel removal. But the immigration laws impose strict eligibility requirements for cancellation of removal. To reiterate, a lawful permanent

resident such as Barton who has been found removable because of criminal activity is eligible for cancellation of removal "if the alien—(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony." §1229b(a).

To be eligible for cancellation of removal, the lawful permanent resident, during the initial seven years of residence after admission, also must not have committed "an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title." §1229b(d)(1)(B).

The law therefore fashions two distinct ways in which a lawful permanent resident's prior crimes may preclude cancellation of removal.

The law precludes cancellation of removal if the lawful permanent resident has been convicted of an "aggravated felony" *at any time*. The statutory list of aggravated felonies is long: murder, rape, drug trafficking, firearms trafficking, obstruction of justice, treason, gambling, human trafficking, and tax evasion, among many other crimes. §§1101(a)(43)(A)–(U).

In addition, the law precludes cancellation of removal if the lawful permanent resident committed certain other serious crimes *during the initial seven years of residence*. The law defines those offenses by cross-referencing §1182(a)(2), which specifies the offenses that can render a noncitizen "inadmissible" to the United States. Section 1182(a)(2) includes "crime[s] involving moral turpitude," which is a general category that covers a wide variety of crimes. Section 1182(a)(2) also expressly encompasses various violations of drug laws, prostitution, money laundering, and certain DUIs involving personal injury, among other crimes.

§§1182(a)(2)(A)(i), (C), (D), (E), (I); see §1101(h).

In specifying when cancellation of removal would be pre-
cluded because of prior criminal activity, Congress struck a
balance that considers both the nature of the prior crime
and the length of time that the noncitizen has resided in the
United States. If a lawful permanent resident has been
convicted at any time of certain crimes (what the immigra-
tion laws refer to as an "aggravated felony"), then the
noncitizen is not eligible for cancellation of removal. If dur-
ing the initial 7-year period of residence, a lawful perma-
nent resident committed certain other offenses referred to
in §1182(a)(2), then the noncitizen likewise is not eligible
for cancellation of removal.

In providing that a noncitizen's prior crimes (in addition
to the offense of removal) can render him ineligible for can-
cellation of removal, the cancellation-of-removal statute
functions like a traditional recidivist sentencing statute. In
an ordinary criminal case, a defendant may be convicted of
a particular criminal offense. And at sentencing, the de-
fendant's other criminal offenses may be relevant. So too
in the immigration removal context. A noncitizen may be
found removable based on a certain criminal offense. In ap-
plying for cancellation of removal, the noncitizen must de-
tail his entire criminal record on Form EOIR–42A. An im-
migration judge then must determine whether the
noncitizen has been convicted of an aggravated felony at
any time or has committed a §1182(a)(2) offense during the
initial seven years of residence. It is entirely ordinary to
look beyond the offense of conviction at criminal sentencing,
and it is likewise entirely ordinary to look beyond the of-
fense of removal at the cancellation-of-removal stage in im-
migration cases.[5]

––––––––––––

[5] If the offense of removal itself was an aggravated felony or was an
offense listed in §1182(a)(2) that was committed during the initial seven
years of residence, then the offense of removal alone precludes cancella-
tion of removal, regardless of whether the noncitizen has an additional

It is not surprising, moreover, that Congress required immigration judges considering cancellation of removal to look in part at whether the noncitizen has committed any offenses listed in §1182(a)(2). The offenses listed in §1182(a)(2) help determine whether a noncitizen should be admitted to the United States. Under the cancellation-of-removal statute, immigration judges must look at that same category of offenses to determine whether, after a previously admitted noncitizen has been determined to be deportable, the noncitizen should nonetheless be allowed to remain in the United States. If a crime is serious enough to deny admission to a noncitizen, the crime can also be serious enough to preclude cancellation of removal, at least if committed during the initial seven years of residence.

Importantly, the text of the cancellation-of-removal statute does not simply say that cancellation of removal is precluded when, during the initial seven years of residence, the noncitizen was *convicted* of an offense referred to in §1182(a)(2). Rather, the text says that cancellation of removal is precluded when, during the initial seven years of residence, the noncitizen "committed an offense referred to in section 1182(a)(2) . . . that renders the alien inadmissible." §1229b(d)(1)(B). That language clarifies two points of relevance here.

*First*, cancellation of removal is precluded if a noncitizen *committed* a §1182(a)(2) offense during the initial seven years of residence, even if (as in Barton's case) the *conviction* occurred after the seven years elapsed. In other words, as Congress specified in the statute and as the BIA and the Courts of Appeals have recognized, the date of *commission* of the offense is the key date for purposes of calculating whether the noncitizen committed a §1182(a)(2) offense during the initial seven years of residence. See *In re Perez*,

———————
record of prior crimes.

22 I. & N. Dec. 689, 693–694 (BIA 1999) (date of commis-
sion is controlling date); see also *Heredia*, 865 F. 3d, at 70–
71 ("the date of the *commission* of the offense governs the
computation of a lawful permanent resident's continuous
residency in the United States"); *Calix*, 784 F. 3d, at 1012
("Once he was convicted of the offense" referred to in
§1182(a)(2), "he was rendered inadmissible to the United
States. His accrual of continuous residence was halted as
of the date he committed that offense").

*Second*, the text of the law requires that the noncitizen
be rendered "inadmissible" as a result of the offense. For
crimes involving moral turpitude, which is the relevant cat-
egory of §1182(a)(2) offenses here, §1182(a)(2) provides that
a noncitizen is rendered "inadmissible" when he is con-
victed of or admits the offense. §1182(a)(2)(A)(i). As the
Eleventh Circuit explained, "while only commission is re-
quired at step one, conviction (or admission) is required at
step two." 904 F. 3d, at 1301.

In this case, Barton's 1996 state aggravated assault of-
fenses were crimes involving moral turpitude and therefore
"referred to in section 1182(a)(2)." Barton committed those
offenses during his initial seven years of residence. He was
later convicted of the offenses in a Georgia court and
thereby rendered "inadmissible." Therefore, Barton was in-
eligible for cancellation of removal.

As a matter of statutory text and structure, that analysis
is straightforward. The Board of Immigration Appeals has
long interpreted the statute that way. See *Jurado-Delgado*,
24 I. & N. Dec., at 31. And except for the Ninth Circuit, all
of the Courts of Appeals to consider the question have in-
terpreted the statute that way.

B

Barton pushes back on that straightforward statutory in-
terpretation and the longstanding position of the Board of

Immigration Appeals. Barton says that he may not be denied cancellation of removal based on his 1996 aggravated assault offenses because those offenses were not among the offenses of removal found by the Immigration Judge in Barton's removal proceeding. Rather, his 1996 firearms offense and his 2007 and 2008 drug offenses were the offenses of removal.

To succinctly summarize the parties' different positions (with the difference highlighted in italics below): The Government would preclude cancellation of removal under this provision if the lawful permanent resident committed a §1182(a)(2) offense during the initial seven years of residence. Barton would preclude cancellation of removal under this provision if the lawful permanent resident committed a §1182(a)(2) offense during the initial seven years of residence *and if that §1182(a)(2) offense was one of the offenses of removal in the noncitizen's removal proceeding.*

To support his "offense of removal" approach, Barton advances three different arguments. A caution to the reader: These arguments are not easy to unpack.

*First*, according to Barton, the statute's overall structure with respect to removal proceedings demonstrates that a §1182(a)(2) offense may preclude cancellation of removal only if that §1182(a)(2) offense was one of the offenses of removal. We disagree. In removal proceedings, a lawful permanent resident (such as Barton) may be found "deportable" based on deportability offenses listed in §1227(a)(2). A noncitizen who has not previously been admitted may be found "inadmissible" based on inadmissibility offenses listed in §1182(a)(2). See §§1182(a), 1227(a), 1229a(e)(2). Importantly, then, §1227(a)(2) offenses—not §1182(a)(2) offenses—are typically the basis for removal of lawful permanent residents.

Because the offense of removal for lawful permanent residents is ordinarily a §1227(a)(2) offense, Barton's structural argument falls apart. If Barton were correct that this

aspect of the cancellation-of-removal statute focused only on the offense of removal, the statute presumably would specify offenses "referred to in section 1182(a)(2) *or section 1227(a)(2)*." So why does the statute identify only offenses "referred to in section 1182(a)(2)"? Barton has no good answer. At oral argument, when directly asked that question, Barton's able counsel forthrightly acknowledged: "It's a little hard to explain." Tr. of Oral Arg. 27.

This point is the Achilles' heel of Barton's structural argument. As we see it, Barton cannot explain the omission of §1227(a)(2) offenses in the "referred to" clause for a simple reason: Barton's interpretation of the statute is incorrect. Properly read, this is not simply an "offense of removal" statute that looks only at whether the offense of removal was committed during the initial seven years of residence. Rather, this is a recidivist statute that uses §1182(a)(2) offenses as a shorthand cross-reference for a category of offenses that will preclude cancellation of removal if committed during the initial seven years of residence.

By contrast to this cancellation-of-removal provision, some other provisions of the immigration laws do focus only on the offense of removal—for example, provisions governing mandatory detention and jurisdiction. See §§1226(a), (c)(1)(A), (B), 1252(a)(2)(C). But the statutory text and context of those provisions support that limitation. Those provisions use the phrase "inadmissible by reason of" a §1182(a)(2) offense, "deportable by reason of" a §1227(a)(2) offense, or "removable by reason of" a §1182(a)(2) or §1227(a)(2) offense. And the provisions make contextual sense only if the offense justifying detention or denying jurisdiction is one of the offenses of removal. The cancellation-of-removal statute does not employ similar language.

*Second*, moving from overall structure to precise text, Barton seizes on the statutory phrase "committed an offense referred to in section 1182(a)(2) . . . *that renders the*

*alien inadmissible to the United States under section 1182(a)(2)."* §1229b(d)(1)(B) (emphasis added). According to Barton, conviction of an offense listed in §1182(a)(2)—for example, conviction in state court of a crime involving moral turpitude—does not itself render the noncitizen "inadmissible." He argues that a noncitizen is not rendered "inadmissible" unless and until the noncitizen is actually adjudicated as inadmissible and denied admission to the United States. And he further contends that a lawfully admitted noncitizen usually cannot be removed from the United States on the basis of inadmissibility. As Barton puts it (and the dissent echoes the point), how can a lawfully admitted noncitizen be found inadmissible when he has already been lawfully admitted?

As a matter of common parlance alone, that argument would of course carry some force. But the argument fails because it disregards the statutory text, which employs the term "inadmissibility" as a status that can result from, for example, a noncitizen's (including a lawfully admitted noncitizen's) commission of certain offenses listed in §1182(a)(2).

For example, as relevant here, §1182(a)(2) flatly says that a noncitizen such as Barton who commits a crime involving moral turpitude and is convicted of that offense "is inadmissible." §1182(a)(2)(A)(i). Full stop. Similarly, a noncitizen who has two or more convictions, together resulting in aggregate sentences of at least five years, "is inadmissible." §1182(a)(2)(B). A noncitizen who a consular officer or the Attorney General knows or has reason to believe is a drug trafficker "is inadmissible." §1182(a)(2)(C)(i). A noncitizen who receives the proceeds of prostitution within 10 years of applying for admission "is inadmissible." §1182(a)(2)(D)(ii). The list goes on. See, *e.g.,* §§1182(a)(2)(C)(ii)–(E), (G)–(I). Those provisions do not say that a noncitizen will *become* inadmissible if the noncitizen is found inadmissible in a subsequent immigration removal proceeding. Instead,

those provisions say that the noncitizen "*is inadmissible.*"

Congress has in turn made that status—inadmissibility because of conviction or other proof of commission of §1182(a)(2) offenses—relevant in several statutory contexts that apply to lawfully admitted noncitizens such as Barton. Those contexts include adjustment to permanent resident status; protection from removal because of temporary protected status; termination of temporary resident status; and here cancellation of removal. See, *e.g.,* §§1160(a)(1)(C), (a)(3)(B)(ii), 1254a(a)(1)(A), (c)(1)(A)(iii), 1255(a), (*l*)(2). In those contexts, the noncitizen faces immigration consequences from being convicted of a §1182(a)(2) offense even though the noncitizen is lawfully admitted and is not necessarily removable solely because of that offense.

Consider how those other proceedings work. A lawfully admitted noncitizen who is convicted of an offense listed in §1182(a)(2) is typically not removable from the United States on that basis (recall that a lawfully admitted noncitizen is ordinarily removable only for commission of a §1227(a)(2) offense). But the noncitizen is "inadmissible" because of the §1182(a)(2) offense and for that reason may not be able to obtain adjustment to permanent resident status. §§1255(a), (*l*)(2). So too, a lawfully admitted noncitizen who is convicted of an offense listed in §1182(a)(2) is "inadmissible" and for that reason may not be able to obtain temporary protected status. §§1254a(a)(1)(A), (c)(1)(A)(iii). A lawfully admitted noncitizen who is a temporary resident and is convicted of a §1182(a)(2) offense is "inadmissible" and for that reason may lose temporary resident status. §§1160(a)(1)(C), (a)(3)(B)(ii).

Those statutory examples pose a major hurdle for Barton's textual argument. The examples demonstrate that Congress has employed the concept of "inadmissibility" as a status in a variety of statutes similar to the cancellation-of-removal statute, including for lawfully admitted noncitizens. Barton has no persuasive answer to those examples.

Barton tries to say that some of those other statutes involve a noncitizen who, although already admitted to the United States, is nonetheless seeking "constructive admission." Reply Brief 12; Tr. of Oral Arg. 11. But that ginned-up label does not avoid the problem. Put simply, those other statutes show that lawfully admitted noncitizens who are, for example, convicted of §1182(a)(2) crimes are "inadmissible" and in turn may suffer certain immigration consequences, even though those lawfully admitted noncitizens cannot necessarily be removed solely because of those §1182(a)(2) offenses.

The same is true here. A lawfully admitted noncitizen who was convicted of a crime involving moral turpitude during his initial seven years of residence is "inadmissible" and for that reason is ineligible for cancellation of removal.

In advancing his structural and textual arguments, Barton insists that his interpretation of the statute reflects congressional intent regarding cancellation of removal. But if Congress intended that only the offense of removal would preclude cancellation of removal under the 7-year residence provision, it is unlikely that Congress would have employed such a convoluted way to express that intent. Barton cannot explain why, if his view of Congress' intent is correct, the statute does not simply say something like: "The alien is not eligible for cancellation of removal if the offense of removal was committed during the alien's initial seven years of residence."

*Third*, on a different textual tack, Barton argues that the Government's interpretation cannot be correct because the Government would treat as surplusage the phrase "or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title." Recall that the statute, as relevant here, provides that a lawful permanent resident is not eligible for cancellation of removal if, during the initial seven years of residence, he committed "an offense referred to in

section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title *or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title.*" §1229b(d)(1)(B) (emphasis added).

To begin with, all agree that under either side's interpretation, the reference to §1227(a)(4)—as distinct from §1227(a)(2)—is redundant surplusage. See §1229b(c)(4); Brief for Petitioner 32–33 & n. 7. Under the Government's interpretation, it is true that the reference to §1227(a)(2) also appears to be redundant surplusage. Any offense that is both referred to in §1182(a)(2) and an offense that would render the noncitizen deportable under §1227(a)(2) would also render the noncitizen inadmissible under §1182(a)(2). But redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication. The Court has often recognized: "Sometimes the better overall reading of the statute contains some redundancy." *Rimini Street, Inc.* v. *Oracle USA, Inc.*, 586 U. S. ___, ___ (2019) (slip op., at 11); see *Wisconsin Central Ltd.* v. *United States*, 585 U. S. ___, ___ (2018) (slip op., at 7); *Marx* v. *General Revenue Corp.*, 568 U. S. 371, 385 (2013); *Lamie* v. *United States Trustee*, 540 U. S. 526, 536 (2004). So it is here. Most importantly for present purposes, we do not see why the redundant statutory reference to §1227(a)(2) should cause us to entirely rewrite §1229b so that a noncitizen's commission of an offense referred to in §1182(a)(2) would preclude cancellation of removal only if it is also the offense of removal. Redundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text, as Barton would have us do.

One final point: Barton argues in the alternative that even if inadmissibility is a status, and even if the offense

that precludes cancellation of removal need not be one of the offenses of removal, the noncitizen must at least have been *capable of* being charged with a §1182(a)(2) inadmissibility offense as the basis for removal. The dissent seizes on this argument as well. But as we have explained, this cancellation-of-removal statute is a recidivist statute that precludes cancellation of removal if the noncitizen has committed an offense listed in §1182(a)(2) during the initial seven years of residence. Whether the offense that precludes cancellation of removal was charged or could have been charged as one of the offenses of removal is irrelevant to that analysis.

*          *          *

Removal of a lawful permanent resident from the United States is a wrenching process, especially in light of the consequences for family members. Removal is particularly difficult when it involves someone such as Barton who has spent most of his life in the United States. Congress made a choice, however, to authorize removal of noncitizens—even lawful permanent residents—who have committed certain serious crimes. And Congress also made a choice to categorically preclude cancellation of removal for noncitizens who have substantial criminal records. Congress may of course amend the law at any time. In the meantime, the Court is constrained to apply the law as enacted by Congress. Here, as the BIA explained in its 2006 *Jurado-Delgado* decision, and as the Second, Third, Fifth, and Eleventh Circuits have indicated, the immigration laws enacted by Congress do not allow cancellation of removal when a lawful permanent resident has amassed a criminal record of this kind.

We affirm the judgment of the U. S. Court of Appeals for the Eleventh Circuit.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 18–725

_____

### ANDRE MARTELLO BARTON, PETITIONER *v.* WILLIAM P. BARR, ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[April 23, 2020]

JUSTICE SOTOMAYOR, with whom JUSTICE GINSBURG, JUSTICE BREYER, and JUSTICE KAGAN join, dissenting.

The stop-time rule ends a noncitizen's period of continuous residence, making him or her ineligible for certain relief from removal. But to trigger the rule, it takes more than commission of a specified criminal offense: The offense must also render a noncitizen either "inadmissible" or "deportable." In applying these important limitations, the rule directly references the two-track nature of the Immigration and Nationality Act (INA), a statute that has long distinguished between noncitizens seeking admission and those already admitted. Inadmissibility, of course, pertains to noncitizens seeking admission; deportability relates to noncitizens already admitted but removable.

The majority errs by conflating these two terms. It concludes that the term "inadmissible," for the purposes of the stop-time rule, refers to a status that a noncitizen could acquire even if he or she is not seeking admission. Under this logic, petitioner Andre Barton is inadmissible yet, at the same time, lawfully admitted. Neither the express language of the statute nor any interpretative canons support this paradox; Barton cannot and should not be considered inadmissible for purposes of the stop-time rule because he has already been admitted to the country. Thus, for the

stop-time rule to render Barton ineligible for relief from re-
moval, the Government must show that he committed an
offense that made him deportable. Because the Govern-
ment cannot meet that burden, Barton should prevail.

I respectfully dissent.

## I
## A

Cancellation of removal is a form of immigration relief
available to lawful permanent residents (LPRs) and other
noncitizens, including those who have never been lawfully
admitted. 8 U. S. C. §1229b. To obtain this relief, both
groups must continuously reside in the United States for a
certain amount of time. §1229b(a)(2) (seven years for
LPRs); §1229b(b)(1)(A) (10 years for non-LPR noncitizens).

The stop-time rule ends a noncitizen's period of continu-
ous residence (1) when the noncitizen "has committed an
offense referred to in section 1182(a)(2) of this title" that
either (2) "renders" the noncitizen "inadmissible to the
United States under section 1182(a)(2) of this title" or (3)
renders the noncitizen "removable from the United States
under section 1227(a)(2) or 1227(a)(4) of this title."
§1229b(d)(1). The second clause directly invokes grounds of
inadmissibility; the third clause, although using the term
"removable," directly invokes grounds of deportability. See
§1227(a) (specifying "[c]lasses of deportable aliens").[1] Both
the second and the third clauses are cabined by the first: In
addition to rendering a noncitizen either inadmissible or
deportable, the offense must also be one "referred to" in
§1182(a)(2). That provision includes some—but not all—of
the grounds of deportability in §1227.

This distinction between "inadmissible" and "deportable"
matters. Indeed, both are terms of art, so it is critical to

_____

[1] Because the third clause refers to grounds of deportability, the Gov-
ernment appears to agree that the terms "removable" and "deportable"
are interchangeable. See Brief for Respondent 21–22.

understand their histories and their attached meaning over time. See *INS* v. *St. Cyr*, 533 U. S. 289, 312 n. 35 (2001) (noting that "'[w]here Congress borrows terms of art,'" with settled meaning, it "'presumably knows and adopts the cluster of ideas that were attached to each borrowed word'" (quoting *Morissette* v. *United States*, 342 U. S. 246, 263 (1952))).

Until Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), noncitizens seeking physical entry were placed in "'exclusion proceeding[s],'" while those already physically present were placed in "'deportation proceeding[s].'" *Judulang* v. *Holder*, 565 U. S. 42, 45 (2011). Although the grounds for exclusion and deportation—and the procedures applying to each—evolved over time, the immigration laws retained a two-track system; different procedures and processes applied to noncitizens who were deportable and noncitizens who were excludable. Brief for Immigration Law Professors as *Amici Curiae* 3–8.

IIRIRA changed the proceedings and some of the language. All noncitizens are now channeled into "'removal proceeding[s],'" and noncitizens previously labeled "excludable" are now labeled "'inadmissible.'" *Judulang,* 565 U. S., at 46. IIRIRA also altered when a noncitizen faces grounds of inadmissibility, formerly exclusion: Rather than focusing on whether a noncitizen had physically entered the country, the statute now asks whether the noncitizen had been lawfully admitted, in any status, to the country. See §§1101(a)(13)(A), 1182(a).

Still, the immigration laws have retained their two-track structure. Inadmissibility and deportability remain separate concepts, triggered by different grounds. With few exceptions, the grounds for inadmissibility are broader than those for deportability. Compare §1182(a)(2)(A)(i)(I) with §1227(a)(2)(A)(i) (reflecting different treatment for crimes involving moral turpitude). Further, while a noncitizen

charged with inadmissibility bears the ultimate burden to show that he is admissible, the Government bears the burden of demonstrating that a noncitizen is deportable. §§1229a(c)(2), (c)(3).

Whether a noncitizen is charged with inadmissibility or deportability also affects what the noncitizen or the Government must show to carry their respective burdens. A criminal ground for inadmissibility can be made out by showing either that the noncitizen admitted to conduct meeting the elements of a crime or that she was actually convicted of an offense. See, *e.g.*, *Pazcoguin* v. *Radcliffe*, 292 F. 3d 1209, 1213–1215 (CA9 2002) (noncitizen inadmissible because he admitted to health officer that he smoked marijuana in his youth); see also §1182(a)(2)(A). By contrast, most criminal grounds for deportability can be established only through convictions. See §§1227(a)(2)(A)(i)–(v), (a)(2)(B)(i).

Finally, the substantive standards for cancellation of removal are also less stringent for a subset of deportable noncitizens: LPRs like Barton. Among other things, while an otherwise-eligible LPR must merely demonstrate that he or she deserves the relief as a matter of discretion, see *In re C-V-T-*, 22 I. & N. Dec. 7, 10–11 (BIA 1998), non-LPRs must demonstrate exceptional and extremely unusual hardship to an LPR or citizen parent, spouse, or child, §1229b(b)(1)(D).

These separate categories and procedures—treating deportable noncitizens more generously than inadmissible noncitizens, and treating one group of deportable noncitizens (LPRs) the most generously of all—stem from one animating principle. All noncitizens in this country are entitled to certain rights and protections, but the protections afforded to previously admitted noncitizens and LPRs are particularly strong. See *Demore* v. *Kim*, 538 U. S. 510, 543–544 (2003) (Souter, J., concurring in part and dissenting in

part). Indeed, "[t]he immigration laws give LPRs the opportunity to establish a life permanently in this country by developing economic, familial, and social ties indistinguishable from those of a citizen." *Id.*, at 544. Because those already admitted, like Barton, are often presumed to have greater connections to the country, the immigration laws use separate terms and create separate procedures for noncitizens seeking admission to the country on the one hand, and those who were previously admitted on the other.

The stop-time rule carries that distinction forward. The rule specifies how a period of continuous residence ends for noncitizens who are seeking admission and thus are inadmissible, as well as noncitizens who are already admitted and thus are deportable. By using separate terms and grounds for two groups of people, the stop-time rule thus reflects the two-track dichotomy for inadmissible or deportable noncitizens that pervades the INA.

## B

Barton is a longtime lawfully admitted resident of the United States. He and his mother moved to the United States from Jamaica when he was about 10 years old. They both entered legally and, through Barton's stepfather, soon adjusted their status to LPRs. When Barton was placed in removal proceedings, all of his immediate family—his mother, his children, his fiancee—were living in the United States. He had not returned to Jamaica in 25 years.

Barton was first arrested in 1996, when he was 17 or 18, after a friend shot at his ex-girlfriend's house while he was present. Both he and his friend were convicted of, among other things, aggravated assault and possession of a firearm. Barton later testified before an immigration judge that he was unaware that his friend had a gun or was planning to shoot it.

After attending a boot camp and obtaining his GED, Barton led a law-abiding life for several years. But in the mid-

2000s, Barton developed a drug problem and was convicted twice on possession charges. After attending two drug rehabilitation programs, Barton was never arrested again. He graduated from college, began running an automobile repair shop, and became a father to four young children.

Just a few years ago—nearly 10 years after his last arrest—the Government detained Barton and placed him in removal proceedings. Because he had been lawfully admitted to the country, the Government could not charge him with any grounds of inadmissibility. Rather, the Government charged, and Barton conceded, that he was deportable based on prior firearms and drug convictions. (All agree that Barton's aggravated-assault offense did not qualify as a deportable offense under §1227.) Barton then sought cancellation of removal.

Perhaps recognizing that Barton had a strong case for cancellation of removal on the merits, see *C-V-T-*, 22 I. & N. Dec., at 11 (factors such as "family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred at a young age)," and "business ties" all favor a noncitizen seeking cancellation), the Government contended that Barton was categorically ineligible for that relief. It reasoned that Barton's prior offenses triggered the stop-time rule and that Barton therefore could not meet the continuous-residence requirement.

The problem (for the Government) was finding a prior offense that actually triggered the stop-time rule. None of the offenses that had made Barton deportable—his firearms and drug convictions—satisfied the stop-time rule's first clause because §1182(a)(2) does not "refe[r] to" those offenses. The Government therefore could not argue that Barton's firearms and drug offenses ended Barton's period of continuous residence under the stop-time rule. As for Barton's aggravated-assault offense, it was not a ground for deportability under §1227(a) and therefore did not render

him deportable under the third clause of the stop-time rule.

So the Government took a different tack: It argued that, even though Barton had already been admitted (and was not seeking readmission), his aggravated-assault offense "render[ed him] inadmissible" under the second clause of the stop-time rule. That is, although the Government could not charge Barton with inadmissibility, it relied upon a ground of inadmissibility to assert that Barton was not entitled to relief from removal.

The Immigration Judge agreed with the Government. The judge made clear, however, that she would have granted Barton's cancellation application had he satisfied the continuous-residence requirement. The judge cited, among other things, Barton's strong family ties, including his four young children who were all U. S. citizens. The judge concluded that because "his last arrest was over 10 years ago," Barton "is clearly rehabilitated." The judge also concluded that Barton's family "relies on him and would suffer hardship if he were to be deported to Jamaica." App. to Pet. for Cert. 36a.

## II

Barton makes two arguments to this Court. The Court focuses on the first—that the stop-time rule will "rende[r]" a noncitizen inadmissible only if the person is actually adjudicated inadmissible based on the given offense. But whether Barton is right on that score is irrelevant because Barton's second argument—which the Court fails to grapple with meaningfully—is surely correct: At the very least, an offense cannot "rende[r]" someone inadmissible unless the Government can legally charge that noncitizen with a ground of inadmissibility. That is, the stop-time rule is consistent with basic immigration law: A noncitizen who has already been admitted, and is not seeking readmission, cannot be charged with any ground of inadmissibility and thus cannot be deemed inadmissible.

Because the stop-time rule uses the terms "removable" (*i.e.*, deportable) and "inadmissible" in the disjunctive, the Court must analyze the rule against the INA's historic two-track backdrop. That context confirms that the term "inadmissible" cannot refer to a noncitizen who, like Barton, has already been admitted and is not seeking readmission. Indeed, the terms "inadmissible" and "deportable" are mutually exclusive in removal proceedings: A noncitizen can be deemed either inadmissible or deportable, not both. §1229a(e) (for the purposes of removal statute and §1229b—governing cancellation of removal—a noncitizen is "inadmissible under section 1182" if "not admitted to the United States," and "deportable under section 1227" if "admitted to the United States"). For the purposes of the stop-time rule, a person is not "inadmissible" unless that person actually seeks admission, and thus is subject to charges of inadmissibility.

After all, if the provision applied to those who could hypothetically be rendered inadmissible, it could have said so. For example, the statute would have said that it applied when "the alien has committed an offense referred to in section 1182(a)(2) of this title" that either (2) "*could render* the alien inadmissible to the United States under section 1182(a)(2) of this title" or (3) *could render* the noncitizen "removable [*i.e.*, deportable] from the United States under section 1227(a)(2) or 1227(a)(4) of this title."[2]

---

[2] The Court seems to suggest that the stop-time rule's tense simply mirrors §1182(a)(2). See *ante*, at 13–14. It is true that §1182(a)(2) speaks in the present tense, stating that a noncitizen "is inadmissible" if she has been "convicted of" or "admits having committed" certain offenses. §1182(a)(2)(A)(i). But the Court's argument does not follow. Section 1182, by its terms, applies only to "[c]lasses of aliens ineligible for visas or admission." §1182(a). Because the provision applies only to noncitizens seeking admission, it is only natural that the clause uses the present tense to describe when such a noncitizen "is inadmissible." By

The Government's reading—that a noncitizen can be inadmissible under the stop-time rule without seeking admission at all—flouts basic statutory-interpretation principles. Among "the most basic interpretative canons" is "that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley* v. *United States*, 556 U. S. 303, 314 (2009) (internal quotation marks and alteration omitted). Were the stop-time rule agnostic to whether the noncitizen actually seeks admission, then the rule's third clause—regarding deportability—would be meaningless. When a noncitizen is "removable"—*i.e.*, deportable—under §1227 for an offense "referred to" in §1182(a)(2), he or she is also "inadmissible" for an offense "referred to" in §1182(a)(2). The third clause has meaning only if inadmissibility and deportability apply, as they always have, to separate groups of noncitizens—noncitizens seeking admission on the one hand, and noncitizens already admitted on the other.

To be sure, there are limited exceptions to the general rule that questions of admissibility apply only to noncitizens seeking formal admission. Noncitizens applying for adjustment of status must establish admissibility. §§1255(a), (*l*)(2). But that is because adjustment of status is an express proxy for admission: "Congress created the [process] to enable an alien physically present in the United States to become an LPR without incurring the expense and inconvenience of traveling abroad to obtain an immigrant visa" and then presumably demonstrating admissibility on return. DHS, U. S. Citizenship and Immigration Services Policy Manual, vol. 7, pt. A, ch. 1 (2020), https://www.uscis.gov/policy-manual. Far from a "ginned-

—————————

contrast, the stop-time rule, under the Government's and Court's reading, purports to apply to noncitizens not seeking admission at all—and who therefore could not possibly be adjudicated inadmissible.

up label," *ante*, at 15, the term "constructive admission" ex-
presses precisely how the INA conceives of adjustment of
status: an admissions process that occurs inside the United
States as opposed to outside of it.

Alternatively, the Government also relies on two narrow
provisions of the INA applicable to "[s]pecial agricultural
workers," 8 U. S. C. §1160(a)(3)(B)(ii), and "certain en-
trants before January 1, 1982," §1255a(b)(2)(B). These pro-
visions, it argues, demonstrate that throughout the INA,
inadmissibility is a status untethered to admission. But
these provisions, too, refer to noncitizens seeking adjust-
ment of status. §1160(a)(1) (setting procedures for adjust-
ment of status of certain noncitizens); §1255a(a) (same).[3]
Even if the Government were correct that these statutes
deem a noncitizen inadmissible outside of an application for
admission, its argument would rise and fall on a few provi-
sions within the expansive INA.[4]  In any event, neither of
these provisions is similar in structure and purpose to the
stop-time rule.  Neither refers to grounds of inadmissibility
and grounds of deportability in tandem.  What is more, nei-
ther appears to confer or deny relief exclusively in removal
proceedings—where the dichotomy between inadmissibility
and deportability is most important.

_____

[3] Indeed, one of the provisions suggests that, outside the context in
which a noncitizen seeks adjustment of status (and thus seeks construc-
tive admission), a noncitizen's status can be terminated "only upon a de-
termination . . . that the alien is deportable."  §1160(a)(3)(A).

[4] The Government also notes that a noncitizen would be deportable
were she inadmissible at entry (or during adjustment of status) but er-
roneously admitted (or allowed to adjust status).  Brief for Respondent
18–19 (citing §1227(a)(1)(A)).  But this provision directly undermines the
Government's reading of the statute.  Were inadmissibility a status un-
tethered to admission, a noncitizen inadmissible at the time of entry
would always be inadmissible.  But because a noncitizen who was al-
ready admitted cannot be adjudicated inadmissible, Congress made er-
roneous admission a ground of deportability, not inadmissibility.

By contrast, the Government concedes that the term "inadmissible" in the mandatory-detention statute—a provision structurally similar to the stop-time rule—applies only to noncitizens capable of being charged with inadmissibility. Brief for Respondent 30. That provision specifies, in relevant part, that the Government "shall take into custody any alien who—(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2)" or "(C) is deportable under section 1227(a)(2)(A)(i) . . . on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year." §1226(c)(1) (footnote omitted).

Although the term "inadmissible" in this context does not refer to an actual adjudication of inadmissibility, see *Demore*, 538 U. S., at 513, 531, the Government accepts that it must at least refer to a possible charge on a noncitizen seeking admission. Brief for Respondent 30. Otherwise, the statute would subject already-admitted noncitizens—even those who are not deportable for any criminal offense—to mandatory detention, simply because they occupy the "status" of inadmissibility. This provision's structure is virtually the same as the stop-time rule: It refers to grounds of inadmissibility and grounds of deportability separately and applies to a noncitizen in removal proceedings.

Given the similar structure, the stop-time rule should be read the same as the mandatory-detention provision: to refer to adjudications that are possible rather than impossible. If a noncitizen seeking admission has committed a crime under §1182(a)(2) and is convicted of or admits to the offense, that offense "renders" the noncitizen "inadmissible" because the noncitizen can be charged and found inadmissible based on that crime. But such an offense does not render a noncitizen inadmissible if, like Barton, he or she was admitted years earlier and does not seek readmission. For a noncitizen who has already been admitted, Congress carved out a separate category of offenses in both the stop-

time rule and the mandatory-detention provision: here, those referred to in §1182(a)(2) that render a noncitizen deportable under §§1227(a)(2) and (a)(4).

## III

The Court reaches a different result only by contorting the statutory language and by breezily waving away applicable canons of construction. At various points the Court seems to ignore the rule's second and third clauses entirely—clauses that, as mentioned above, distinguish between grounds of inadmissibility and grounds of deportability. The Court insists that the statute "operates like traditional criminal recidivist laws" because it precludes cancellation of removal for a noncitizen who "has committed an offense listed in §1182(a)(2) during the initial seven years of residence." *Ante*, at 2; see also *ante*, at 7, 8, n. 5, 17.

Had Congress intended for commission of a crime in §1182(a)(2) alone to trigger the stop-time rule, it would have said so. In fact, it would have stopped at the rule's first clause, which (without more) states the Court's rule: that the time of continuous residence stops whenever a noncitizen "has committed an offense referred to in section 1182(a)(2) of this title." §1229b(d)(1).

But that reading ignores the rest of what Congress wrote. Congress specified that it is not enough for a noncitizen to commit a crime listed in §1182(a)(2); that crime must also "rende[r] the alien inadmissible to the United States under section 1182(a)(2) of this title" or "removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title." §1229b(d)(1). Those words have meaning—invoking the two-track structure of the INA and the distinction between grounds of inadmissibility and grounds of deportability—and the Court cannot simply will them out of existence.

Even when the Court finally discusses the second clause, "renders the alien inadmissible," the Court raises more

questions than it answers—and answers questions that it
need not address at all. First, the Court claims, the clause
makes clear that "cancellation of removal is precluded if an
alien *committed* a §1182(a)(2) offense during the initial
seven years of residence, even if (as in Barton's case) the
*conviction* occurred after the seven years elapsed." *Ante*, at
9. Despite the emphasis the Court lays on this point, it is
irrelevant to this case: Barton does not dispute that the
stop-time rule is triggered by the date of commission of a
crime rather than a later date of conviction. Brief for Peti-
tioner 9, n. 4. The question in this case is whether certain
offenses can possibly render Barton inadmissible when he
does not seek admission and has already been admitted—
regardless of whether one looks to the date of commission
or the date of conviction of those offenses.[5]

Even if this question mattered and were properly before
us, Congress could have made the same point—that the
stop-time rule is triggered by commission of a crime—by
omitting the second and third clauses entirely. It again
could have written what the Court, at various points, seems
to wish it had written: The stop-time rule is triggered when-
ever a noncitizen "has committed an offense referred to in
section 1182(a)(2) of this title." The second and third
clauses—which refer to later events, when a noncitizen is
actually "render[ed]" inadmissible or deportable—make the
Court's aside less plausible, not more.

The Court next insists that the second clause makes clear
that the crime must "rende[r]" the noncitizen "inadmissi-
ble"—which, in the Court's view, requires only that a
noncitizen admit the crime or be convicted of it. *Ante,* at 10.

—————

[5] Courts have split over what event triggers the stop-time rule—com-
mission of the offense or a second, later point at which the offense "ren-
der[s]" the noncitizen inadmissible. Brief for Momodoulamin Jobe et al.
as *Amici Curiae* 12–13. Because this point about the trigger date is nei-
ther disputed here nor briefed by either party, the Court's opinion should
not be read to resolve a Circuit split that is not before this Court.

But given the INA's historic two-track structure, a nonciti-
zen is not "render[ed]" inadmissible when convicted of an
offense that cannot serve as a ground of removal at all. The
Court also fails to clarify why, if conviction or admission
alone renders any noncitizen inadmissible regardless of ad-
mission status, Congress chose to add a third clause refer-
ring to grounds of deportability.

Indeed, what does the Court do about the canon against
surplusage? The Court does not dispute that its reading
makes the entire third clause of the stop-time rule mean-
ingless. It offers only two rejoinders: (1) that the reference
to subsection (a)(4) in the third clause is superfluous under
either party's reading, and (2) that a bit of surplusage
makes no difference in any event. *Ante,* at 15–16. To be
sure, "[s]ometimes the better overall reading of the statute
contains some redundancy." *Rimini Street, Inc.* v. *Oracle
USA, Inc.*, 586 U. S. ___, ___ (2019) (slip op., at 11). But the
Court relies on more than just "some redundancy." It dis-
misses out of hand one of only three clauses in the stop-time
rule—without regard for the clause's pedigree or the core
difference between deportability and inadmissibility.

It remains this Court's "'duty "to give effect, if possible,
to every clause and word of a statute."'" *Duncan* v. *Walker*,
533 U. S. 167, 174 (2001) (quoting *United States* v.
*Menasche*, 348 U. S. 528, 538–539 (1955)). It must there-
fore be "'reluctan[t] to treat statutory terms as surplusage'
in any setting," 533 U. S., at 174 (quoting *Babbitt* v. *Sweet
Home Chapter, Communities for Great Ore.*, 515 U. S. 687,
698 (1995))—especially in this context, where each word
could dictate categorical ineligibility for relief from re-
moval. It also does not matter that, as the Government
points out, §1227(a)(4) did not initially refer to any crimes
cross-referenced in §1182(a)(2). Brief for Respondent 32–

33.[6]  Congress' decision to make a noncitizen ineligible for cancellation based on a to-be-determined class of crimes is far different from excising and giving no meaning to an entire clause.

\*　\*　\*

At bottom, the Court's interpretation is at odds with the express words of the statute, with the statute's overall structure, and with pertinent canons of statutory construction. It is also at odds with common sense. With virtually every other provision of the INA, Congress granted preferential treatment to lawfully admitted noncitizens—and most of all to LPRs like Barton. But because of the Court's opinion today, noncitizens who were already admitted to the country are treated, for the purposes of the stop-time rule, identically to those who were not—despite Congress' express references to inadmissibility and deportability. The result is that, under the Court's interpretation, an immigration judge may not even consider whether Barton is entitled to cancellation of removal—because of an offense that Congress deemed too trivial to allow for Barton's removal in the first instance. Because the Court's opinion does no justice to the INA, let alone to longtime LPRs like Barton, I respectfully dissent.

---

[6] Barton acknowledges that, even now, the reference to §1227(a)(4) "does little or no work" for a separate reason: Noncitizens who are deportable under that subsection are ineligible for cancellation of removal. Brief for Petitioner 33, n. 7. But, according to Barton, there are scenarios in which the reference to §1227(a)(4) nevertheless "'may . . . not be a redundancy,'" *ibid.*, and perhaps for this reason, the Government does not focus on this argument in its brief.