**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PETR VASILYEVICH
RUDNITSKYY,

*Petitioner*,

v.

MERRICK GARLAND, Attorney
General,

*Respondent*.

No. 21-1098

Agency No.
A094-534-740

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 21, 2023
Portland, Oregon

Filed September 14, 2023

Before: Mark J. Bennett, Lawrence VanDyke, and Holly
A. Thomas, Circuit Judges.

Opinion by Judge VanDyke

# SUMMARY[*]

## Immigration

The panel denied a petition for review of the Board of Immigration Appeals' dismissal of an appeal by petitioner Petr Vasilyevich Rudnitskyy of an immigration judge's denial of cancellation of removal, holding that the agency did not err in concluding that the stop-time rule set forth in 8 U.S.C. § 1229b(d)(1)(B), which terminates accrual of the requisite seven years of continuous physical presence, is calculated from the date a petitioner committed the criminal offense that rendered him removable, rather than the date he was convicted.

A lawful permanent resident becomes removable once he is convicted of a qualifying offense, and if the offense is committed within seven years of being admitted into the United States, the Attorney General lacks discretion to cancel removal. Here, petitioner committed the offense a few months shy of satisfying the seven-year continuous residence requirement, but the conviction became final outside the statutory seven-year period.

The panel held that the agency did not err in deciding that the stop-time rule is calculated from the date petitioner committed the criminal offense that rendered him removable, rather than the date he was convicted. The panel explained that: (i) the text of the stop-time rule set forth in 8 U.S.C. § 1229b(d)(1)(B) provides that once a conviction

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

renders a noncitizen removable, the commission of the underlying offense is deemed to terminate the seven years of continuous residence required to be eligible for cancellation of removal; (ii) the Supreme Court adopted this interpretation in *Barton v. Barr*, 140 S. Ct. 1442 (2020) (abrogating this court's decision in *Nguyen v. Sessions*, 901 F.3d 1093 (9th Cir. 2018)); and (iii) every other circuit to decide the question, as well as the BIA, agrees with this conclusion. Accordingly, the panel held that the agency did not err in holding that petitioner is statutorily ineligible for cancellation of removal because his offense occurred within the seven-year period.

## COUNSEL

Brian P. Conry (argued), Brian Patrick Conry PC, Portland, Oregon, for Petitioner.

Katie E. Rourke (argued), Corey L. Farrell, and Colin J. Tucker, Trial Attorneys; Sabatino F. Leo, Assistant Director; Brian M. Boynton, Principal Deputy Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

VANDYKE, Circuit Judge:

Petitioner has been a lawful permanent resident (LPR) of the United States since 2003. Since that time, he has been convicted of various crimes, including theft, criminal trespass, a DUI, and, as relevant here, possession of heroin in violation of Oregon law. After he received a notice to appear (NTA) initiating removal proceedings, Petitioner applied for cancellation of removal. Such discretionary relief is available to noncitizens who establish a continuous residence in the United States for seven years, subject to a "stop-time rule." This case turns on the interpretation of the stop-time rule because Petitioner committed the heroin offense within the seven-year period but was convicted after the period ended.

We conclude that the agency did not err in deciding that the stop-time rule is calculated from the date Petitioner committed a criminal offense that rendered him removable, rather than the date he was convicted. We do so because: (i) the text of the stop-time rule set forth in 8 U.S.C. § 1229b(d)(1)(B) provides that once a conviction renders a noncitizen removable, the commission of an underlying offense is deemed to terminate the seven years of continuous residence required to be eligible for cancellation of removal; (ii) the Supreme Court adopted this interpretation in *Barton v. Barr*, 140 S. Ct. 1442, 1449–50 (2020); and (iii) every other circuit to decide the question (as well as the Board of Immigration Appeals (BIA)) agrees.

## I.

Due to the statutory complexities at issue in this case, we begin with a brief summary of the relevant Immigration and Nationality Act (INA) provisions that govern the application of the stop-time rule. We then turn to the factual and procedural background.

## A.

In general, an inadmissible or deportable LPR may qualify for discretionary cancellation of removal if he has been lawfully admitted for permanent residence for at least five years and has resided in the United States continuously for seven years without being convicted of an aggravated felony. 8 U.S.C. § 1229b(a).

That period of continuous residence is subject to the stop-time rule. Specifically,

> any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) … *when* the alien is served a[n] [NTA] … or (B) *when* the alien has *committed* an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title, whichever is earliest.

8 U.S.C. § 1229b(d)(1) (emphases added).

In other words, where a noncitizen has become removable due to a conviction, the stop-time rule retroactively cuts off the continuous residence period as of

the date an offense is committed. But removability itself turns on the fact of conviction, because a noncitizen is "removable" if he is "inadmissible" under 8 U.S.C. § 1182 or "deportable" under 8 U.S.C. § 1227, and those provisions turn on a conviction. 8 U.S.C. § 1229a(e)(2).[1] Thus, a conviction rendering a noncitizen removable will refer back to a date of commission to determine whether the stop-time rule applies.

As relevant here, then, an LPR becomes removable once he is convicted of a qualifying offense, and if the LPR had committed an act in violation of a state's drug statute or regulation within seven years of being admitted, the Attorney General lacks discretion to cancel the LPR's removal.

**B.**

Petitioner is a native and citizen of Ukraine who entered the United States as a refugee in 2003. Two years later, his status was adjusted to that of an LPR. In 2007, Petitioner began to develop a substantial criminal record in Oregon, resulting in convictions for criminal trespass, theft, and DUI. As relevant here, moreover, Petitioner possessed heroin unlawfully on October 14, 2009, just months shy of satisfying the INA's seven-year continuous residence requirement. On November 2, 2009, he was charged with heroin possession in violation of Oregon Revised Statute

---

[1] "[A]ny alien convicted of … acts which constitute the essential elements of … a violation of … any law or regulation of a State … relating to a controlled substance … is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i). And "[a]ny alien who at any time after admission has been convicted of a violation of … any law or regulation of a State … relating to a controlled substance … is deportable." 8 U.S.C. § 1227(a)(2)(B)(i).

section 475.854, a "Class B Felony," and on January 20, 2011, after the seven-year period had ended, Petitioner was convicted.

Shortly after the conviction, Petitioner was served an NTA, and the agency initiated removal proceedings. Petitioner successfully moved to terminate the proceedings pending the appeal of his conviction. His conviction was affirmed in October 2014. *State v. Rudnitskyy*, 338 P.3d 742, 746 (Or. Ct. App. 2014). A new NTA was served on Petitioner in August 2015.

In late 2015, Petitioner appeared before the Immigration Judge (IJ) with counsel and conceded removability, but he twice obtained a continuance pending his efforts to obtain post-conviction relief. In July 2016, Petitioner appeared again before the IJ, this time with applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). In November 2016, he also applied for cancellation of removal. In August 2018, Petitioner moved for (and was denied) termination of removal proceedings under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), on the theory that his NTA was defective and incomplete, and thereby deprived the agency of jurisdiction.

In September 2018, Petitioner moved to continue the removal proceedings to appeal the denial of post-conviction relief, but the IJ denied the continuance motion for failure to show good cause and pretermitted his application for cancellation of removal. The IJ specifically held that Petitioner failed to assert more than a speculative claim that he was likely to receive post-conviction relief. And, in any event, Petitioner did not show how post-conviction relief would materially affect the removal proceedings, given that (i) as a result of Petitioner's conviction, he was statutorily

ineligible for cancellation of removal because the *commission* of the offense he was later convicted of terminated the continuous residence period, (ii) Petitioner did not challenge the date of the *commission* of the offense, (iii) Petitioner conceded that the *conviction* rendered him removable, and (iv) Petitioner did not show that post-conviction relief would expunge the *conviction* from his indisputably "long criminal record." In applying the stop-time rule, the IJ concluded that:

> [O]nly six years, six months, and 24 days have lapsed between his admission to the United States and his commission of a crime that … renders him removable under … [the INA]. That is approximately five months short of the seven-year [continuous] residence requirement.

Finally, in November 2018, Petitioner appeared before the IJ for his merits hearing and withdrew his applications for asylum, withholding of removal, CAT relief, and cancellation of removal, resulting in the IJ's denial of those applications. The IJ's summary order directed that Petitioner be removed to Ukraine and indicated that all his applications for relief were withdrawn.

Before the BIA, Petitioner appealed the IJ's denial of his motions to terminate and to continue the proceedings. He argued that the IJ erred in holding that the stop-time rule terminates a convicted alien's continuous residence period as measured from the date an offense is committed rather than the date of the conviction (i.e., the date the alien

becomes removable).**[2]**     Petitioner also argued that deportation would constitute a cruel and unusual punishment (or an "unconstitutionally disproportionate penalty") in violation of the Eighth Amendment, and that the IJ erred in denying his jurisdictional *Pereira* challenge to the completeness of the NTA.

The BIA dismissed the appeal in October 2021.  The BIA cited *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), and specifically agreed with the IJ that (i) Petitioner became deportable once he was convicted of the controlled substance offense and that, because the offense was committed within seven years of Petitioner's admission as an LPR, the stop-time rule rendered him ineligible for cancellation of removal; (ii) Petitioner's *Pereira* argument fails under controlling case law; and (iii) orders of removal do not constitute cruel and unusual punishment.   With respect to the stop-time rule, the BIA specifically held that "the date of the commission of the offense rather than the date of conviction is dispositive for the purpose of establishing eligibility for cancellation of removal."

The instant petition for review was filed together with a motion for stay of removal.  The petition is focused solely on the stop-time rule issue.  Petitioner's opening brief argues that Petitioner never admitted he committed the underlying offense, that he was not statutorily "rendered" deportable until his conviction was final (after appeals had been exhausted), and that therefore the stop-time rule is measurable from the date of his conviction—which falls

---

[2] On this issue, Petitioner also argued cancellation of removal was appropriate in light of changed circumstances, particularly Petitioner's completion of a drug rehabilitation program.

outside the statutory seven-year window—and not the date of his offense.**3**

Petitioner also appears to suggest that the term "whichever is earliest" in the stop-time rule provision means that LPRs are generally only subject to inadmissibility if they leave the United States, *see* 8 U.S.C. § 1101(a)(13), and that therefore the earliest date he could be rendered inadmissible would have to be the date on which he leaves the United States, which he has not yet done.

Petitioner acknowledges the Supreme Court's recent *Barton* decision, which held that the commission of a section 1182(a)(2) offense triggers the stop-time rule, but argues that *Barton* is distinguishable for two reasons. 140 S. Ct. at 1445–46 & n.1. First, the petitioner in *Barton* presented different arguments: the petitioner in *Barton* argued that the inadmissibility consequences of his conviction did not apply to him because he had not left the United States, whereas, here, Petitioner argues that the earliest event from which he could be rendered inadmissible is the date of his conviction. Second, the petitioner's counsel in *Barton* admitted before the agency that the petitioner had been convicted of a crime involving moral turpitude, whereas, here, Petitioner never admitted to committing the controlled substance offense. Accordingly, Petitioner seeks another chance to show entitlement to cancellation of removal and asks that the court "remand the case for a cancellation of removal hearing."

We have jurisdiction under 8 U.S.C. § 1252. "Where, as here, the BIA cites *Burbano* and also provides its own

---

[3] To the extent Petitioner now argues for the first time in his reply that the rule of lenity should apply, that argument is waived. *See Alcaraz v. I.N.S.*, 384 F.3d 1150, 1161 (9th Cir. 2004).

review of the evidence and law, we review both the IJ's and the BIA's decisions." *Ali v. Holder*, 637 F.3d 1025, 1028 (9th Cir. 2011). We "review questions of law de novo" and the agency's "factual findings for substantial evidence." *Chavez-Garcia v. Sessions*, 871 F.3d 991, 995 (9th Cir. 2017).

In determining whether the agency properly interpreted 8 U.S.C. § 1229b, "we employ the analysis set forth ... in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45 (1984), as further explained in *Food and Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000)." *Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649, 651 (9th Cir. 2004) (citations omitted). But when binding precedent and the statutory language dictate the result, this court has simply looked to precedent and the statutory text without engaging in a detailed *Chevron* analysis. *See Vasquez-Hernandez v. Holder*, 590 F.3d 1053, 1056–57 (9th Cir. 2010).

## II.

The agency correctly held that the stop-time rule is calculated from the date Petitioner committed a felony that rendered him inadmissible or removable upon his later conviction, rather than the conviction date. The agency's determination is supported by (i) the statutory text and purpose of the stop-time rule; (ii) the Supreme Court's *Barton* decision (which abrogated our decision in *Nguyen v. Sessions*, 901 F.3d 1093 (9th Cir. 2018)); and (iii) the decisions of the BIA and all sister circuits to decide the question.

**A.**

As explained above, two events are relevant to this case, but for different purposes. First, the time at which an offender admits to or is convicted of an underlying offense is relevant for the purpose of determining inadmissibility or removability. *See* 8 U.S.C. §§ 1182(a)(2)(A), 1227(a)(2)(A), 1229a(e)(2). If an offender neither admits to nor is convicted of an offense under sections 1182(a)(2), 1227(a)(2), or 1227(a)(4), the inadmissibility or removability provisions of those sections do not apply, and the stop-time rule is irrelevant.

Second, once a noncitizen has been rendered inadmissible or removable under those provisions, the stop-time rule applies and "any period of continuous residence … shall be deemed to end … when" the noncitizen has either (i) been served an NTA, or (ii) "committed" an offense referred to in section 1182(a)(2), "whichever is earliest." 8 U.S.C. § 1229b(d)(1). Following a conviction, then, the continuous residence clock is deemed to have stopped back "when the alien … committed an offense" under section 1182(a)(2). 8 U.S.C. § 1229b(d)(1)(B). Moreover, the surrounding text indicates that the phrase "whichever is earliest" refers to the two possible triggering events: (i) service of the NTA, and (ii) commission of the offense. Contrary to Petitioner's argument, it does not refer generally to whatever events may implicate removability elsewhere in the INA.

This plain reading also comports with common sense. The purpose of the stop-time rule would be disserved and the rule would be subject to abuse if it were possible to commit a crime within the statutory seven-year period and then utilize every possible litigation strategy to ensure that

whatever conviction may result (or is finalized after the appellate process has been exhausted) occurs after the statutory period. To interpret the stop-time rule differently would also improperly incentivize prolonging removal proceedings. *See Pereira*, 138 S. Ct. at 2119 ("Congress enacted the stop-time rule to prevent noncitizens from exploiting administrative delays to 'buy time' during which they accumulate periods of continuous presence."). The statutory text and purpose of the stop-time rule therefore support the agency's determination.

## B.

In *Barton*, the Supreme Court read the stop-time rule as precluding an LPR's cancellation of removal if he "has *committed* an offense listed in § 1182(a)(2) during the initial seven years of residence." *Barton*, 140 S. Ct. at 1445–46 (emphasis added). *Barton*, moreover, abrogated our decision in *Nguyen*, the case on which Petitioner relies. In *Nguyen*, the parties agreed that the stop-time rule can be triggered by two events: either the commission of an offense or that offense's subsequent effect of rendering the offender inadmissible or removable. *Nguyen*, 901 F.3d at 1096. That Nguyen possessed cocaine in violation of the law was undisputed. *Id.* But the *Nguyen* panel concluded that (i) an LPR already admitted to the United States could not be "rendered" inadmissible because the provisions governing *inadmissibility* generally only apply to those seeking *admission*, whereas LPRs are only subject to removal provisions, *id.* at 1095–97; and (ii) if the "commi[ssion of] an offense referred to in section 1182(a)(2)" always "renders the alien inadmissible … or removable," then the clause "that renders the alien inadmissible … or removable" would be superfluous and unnecessary, and so to prevent that reading the stop-time rule only applies where the offense

committed is the ground for being found removable, *id.* at 1097–98.**[4]**   Since Nguyen was already an LPR, the court concluded he could not be "rendered" inadmissible under section 1182(a)(2).  *See id.* at 1097.

The Supreme Court rejected *Nguyen*'s rationale in *Barton*, a case involving an LPR who had committed an offense listed in section 1182(a)(2) shortly before his seven-year period of continuous residence had ended, and who committed other offenses that formed the basis of his removal.  140 S. Ct. at 1447.  *Barton* abrogated *Nguyen* in three key respects.

First, while it is true that the stop-time rule does not apply unless a noncitizen is also rendered inadmissible or removable (such as through a felony conviction), the Court rejected the notion that the stop-time rule is measured from both the commission of an offense and some later event.  The Court held that "[i]f a lawful permanent resident has … committed an offense listed in § 1182(a)(2) during the initial seven years of residence, that criminal record will preclude cancellation of removal."  *Id.* at 1445–46.  The Court rejected the argument Petitioner now raises: "the text of the cancellation-of-removal statute does not simply say that cancellation of removal is precluded when, during the initial seven years of residence, the noncitizen was *convicted* of an offense referred to in § 1182(a)(2)."  *Id.* at 1449.  Rather, the date of commission is the relevant date for computing when the stop-time rule applies after a conviction has rendered a noncitizen removable.

---

[4] The Supreme Court in *Barton* specifically addressed and rejected the superfluity argument.  *See Barton*, 140 S. Ct. at 1453.

Second, *Barton* rejected *Nguyen*'s hard distinction between provisions governing inadmissibility and those governing removability, including the argument that an LPR generally cannot be rendered "inadmissible." Echoing *Nguyen*, Barton argued that an LPR "usually cannot be removed from the United States on the basis of inadmissibility." *Id.* at 1451. But as the Court explained, "the argument fails because it disregards the statutory text, which employs the term 'inadmissibility' as a status that can result from … a noncitizen's (including a lawfully admitted noncitizen's) commission of certain offenses listed in § 1182(a)(2)." *Id.* at 1451. In other words, committing an offense that would render a noncitizen inadmissible under section 1182(a)(2) attaches the status of inadmissibility to a noncitizen, regardless of residency. The statute "do[es] not say that a noncitizen will *become* inadmissible if the noncitizen is found inadmissible in a subsequent immigration removal proceeding" but rather that "the noncitizen '*is inadmissible*.'" *Id.* at 1452.

Third, the Court rejected *Nguyen*'s textual argument that unless the ground for finding a noncitizen removable is the same as an offense that occurred within the seven-year period, the stop-time rule does not apply. *Id.* at 1450–51. In *Barton*, the Court held that once a conviction renders a noncitizen removable, the measuring date for the stop-time rule will be the commission of an offense under section 1182(a)(2).[5]   *Id.* at 1449–50. True, "*committing* a

---

[5] To be clear, once a conviction makes a noncitizen inadmissible or removable, the stop-time rule is backdated to when an offense was committed. *Barton*, 140 S. Ct. at 1446 & n.1. As such, the offense committed within the seven-year period need not even be the same offense for which a noncitizen is found removable, and it is precisely that

§ 1182(a)(2) offense precludes cancellation of removal only if the offense also 'renders' the noncitizen inadmissible," and for some offenses (like the one in this case), "the noncitizen must also have been convicted of or admitted the offense" to be inadmissible. *Id.* at 1446 n.1. Thus, once a *conviction* renders a noncitizen inadmissible or removable, the relevant question for determining whether the noncitizen is eligible for cancellation of removal is the date a section 1182(a)(2) offense was *committed*:

> *First*, cancellation of removal is precluded if a noncitizen *committed* a § 1182(a)(2) offense during the initial seven years of residence, even if … the *conviction* occurred after the seven years elapsed. In other words, … the date of *commission* of the offense is the key date for purposes of calculating whether the noncitizen committed a § 1182(a)(2) offense during the initial seven years of residence.

> *Second*, the text of the law requires that the noncitizen be rendered "inadmissible" as a result of the offense. For crimes [listed in section 1182(a)(2)(A)(i)], § 1182(a)(2) provides that a noncitizen is rendered

---

linkage in *Nguyen*'s holding that *Barton* singled out for repudiation. *Id.* at 1448–49.

> "inadmissible" when he is convicted of or
> admits the offense.

*Id.* at 1449–50 (citations omitted). Thus, at every turn, *Barton* contradicted the rationale of *Nguyen*.**[6]**

### C.

As the Supreme Court observed in *Barton*, *Nguyen* was an anomaly compared to the decisions of the BIA and the other circuit courts to decide the same issue. *See Barton*, 140 S. Ct. at 1446, 1448, 1450.

In 1999, an en banc panel of the BIA interpreted the stop-time rule in *Matter of Perez*, 22 I. & N. Dec. 689 (BIA 1999). The BIA held that, "under the natural and straightforward reading of [8 U.S.C. § 1229b(d)(1)], time ceases to accrue on the date an offense is committed." *Id.* at 692 (emphasis omitted). The BIA continued:

> The date that criminal misconduct is
> committed is the critical point in time when
> calculating the statutorily required period of
> time under [8 U.S.C. § 1229b(d)(1)]. The
> subsequent "renders" clause does not impose
> a separate temporal requirement. Rather, it is
> a restrictive clause which … implicitly
> requires that the steps necessary to "render"
> an alien inadmissible or removable shall have

---

[6] It is unnecessary for us to consider how *Chevron* deference applies in this case, because the statute is clear and Supreme Court precedent binds the court. *See Vasquez-Hernandez*, 590 F.3d at 1056–57.

occurred before the offense qualifies for [8
U.S.C. § 1229b(d)(1)] purposes.

*Id.* at 693.  The Supreme Court in *Barton* favorably cited to
*Matter of Perez* when it identified the commission date as
key to the stop-time rule.  140 S. Ct. at 1449–50.

Besides the Ninth Circuit, every circuit that has
considered the issue has agreed that the relevant date for the
stop-time rule is the date a qualifying offense is committed.
*Barton*, 140 S. Ct. at 1446.  These include the Second, Third,
Fourth, Fifth, Seventh, and Eleventh Circuits.  *See Heredia
v. Sessions*, 865 F.3d 60, 70–71 (2d Cir. 2017) ("[A]s long
as a qualifying offense later *does* render the non-citizen
inadmissible under 8 U.S.C. § 1182(a)(2), the date of the
*commission* of the offense governs the computation of a
lawful permanent resident's continuous residency in the
United States."); *Khan v. Att'y Gen. of the U.S.*, 979 F.3d
193, 200 (3d Cir. 2020) ("[T]he stop-time rule's requirement
that a noncitizen 'has committed an offense referred to in
section 1182(a)(2),' 8 U.S.C. § 1229b(d)(1), pegs the date to
the offense conduct—a matter of historical fact that is
unaltered by the noncitizen's conviction …."); *Argueta v.
Barr*, 970 F.3d 532, 533–34 (4th Cir. 2020) ("Because
Argueta committed … an offense [under section 1182(a)(2)]
during his initial seven years of residence after admission to
the United States, and was later convicted of that offense, he
is ineligible for cancellation of removal."); *Calix v. Lynch*,
784 F.3d 1000, 1012 (5th Cir. 2015) ("Once [the noncitizen]
was convicted of the offense, he was rendered inadmissible
to the United States.  His accrual of continuous residence
was halted as of the date he committed that offense."); *Jeudy
v. Holder*, 768 F.3d 595, 598 n.3 (7th Cir. 2014) ("[T]he
stop-time rule operates based on the date the offense is

committed.  The date of a resulting conviction … does not matter."); *Barton v. Att'y Gen. of the U.S.*, 904 F.3d 1294, 1300–01 (11th Cir. 2018); *Rendon v. Att'y Gen. of the U.S.*, 972 F.3d 1252, 1257 n.2 (11th Cir. 2020) ("Qualifying criminal offenses only trigger the stop-time rule once the noncitizen is convicted of or admits to committing a qualifying crime.  After a conviction or admission, the stop-time date is then back-dated to the day the offense was committed." (citations omitted)).[7]

## III.

We hold that, as a consequence of *Barton*'s abrogation of *Nguyen*, the stop-time rule refers to the date a section 1182(a)(2) offense is committed and not a later event.  The agency did not err in holding that Petitioner is statutorily ineligible for cancellation of removal because Petitioner's offense occurred within the INA's seven-year period.

The petition is **DENIED.**[8]

---

[7] Petitioner argues that, in most of the other circuits' cases, either (i) the noncitizen was convicted within the seven-year period, (ii) other legal grounds were involved, or (iii) the procedural posture was distinguishable.  But that does not change that all these circuits interpret the stop-time rule as applying on the date a crime is committed.

[8] Petitioner's motion for a stay of removal pending the adjudication of his petition for review is denied as moot.