NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 19 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| IVAN FEDOROV; NATALIA FEDOROVA; I. F.; E. F.; D. F.; V. F., <br><br> Petitioners, <br><br> v. <br><br> PAMELA BONDI, Attorney General, <br><br> Respondent. | No. 24-219 <br><br> Agency Nos. <br> A246-014-384 <br> A246-014-385 <br> A246-014-386 <br> A246-014-387 <br> A246-014-388 <br> A246-014-389 <br><br> MEMORANDUM[*] |
| IVAN FEDOROV; NATALIA FEDOROVA; I. F.; E. F.; D. F.; V. F., <br><br> Petitioners, <br><br> v. <br><br> PAMELA BONDI, Attorney General, <br><br> Respondent. | No. 24-5468 <br><br> Agency Nos. <br> A246-014-384 <br> A246-014-385 <br> A246-014-386 <br> A246-014-387 <br> A246-014-388 <br> A246-014-389 |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 9, 2025

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

San Francisco, California

Before: BUMATAY, JOHNSTONE, and DE ALBA, Circuit Judges.

Ivan Fedorov, his wife, Natalia Fedorova, and their four children, petition for review of a decision by the Board of Immigration Appeals ("BIA") dismissing their appeal from an Immigration Judge's ("IJ") order denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture.[1] Petitioners also seek review of the BIA's denial of their motion to reopen the removal proceedings. We have jurisdiction under 8 U.S.C. § 1252 and deny both petitions.

When, as here, the BIA incorporates the IJ's findings by citing *Burbano* and adds its own reasoning, we review both decisions. *See Rudnitskyy v. Garland*, 82 F.4th 742, 746 (9th Cir. 2023); *see Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994). We review the BIA's legal determinations de novo and its factual determinations for substantial evidence. *Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2003). We review the BIA's denial of a motion to reopen for abuse of discretion. *Greenwood v. Garland*, 36 F.4th 1232, 1235 (9th Cir. 2022).

---

[1] Natalia and the children are derivative beneficiaries of Fedorov's asylum application. Natalia and three of the children also filed their own applications for relief and protection from removal. Because all the claims are based on the same facts as those of Fedorov and the BIA's findings and legal analysis are applicable to all, we refer only to Fedorov and his application when discussing the petition for review of the BIA's dismissal.

1.      Substantial evidence supports the BIA's determination that Fedorov did not suffer past persecution. The teasing and harassment Fedorov endured as a child does not rise to that level, especially given that he did not suffer any physical harm because of it. *See Nagoulko v. INS*, 333 F.3d 1012, 1016–17 (9th Cir. 2003) (explaining that whether the petitioner suffered "significant physical violence" is a major factor in determining whether the record compels a finding of past persecution). While the IJ determined that Fedorov testified credibly, Fedorov's claim that a gynecologist forced his wife, Natalia, to have an abortion was not supported by medical records or her own declaration or testimony. The BIA therefore reasonably concluded that Fedorov's account of Natalia's forced abortion did not establish past persecution. *See Garland v. Ming Dai*, 593 U.S. 357, 371–72 (2021) (explaining that even if the BIA treats a petitioner's "evidence as credible, the agency need not find his evidence persuasive or sufficient to meet the burden of proof").

2.      Substantial evidence supports the BIA's conclusion that Fedorov did not show a well-founded fear of persecution based on his religion or political opinion. Fedorov claims that because he refused to serve in the Russian military, he will be persecuted if he is removed to Russia. Forced conscription by itself generally does not constitute persecution. *Zehatye v. Gonzales*, 453 F.3d 1182, 1187 (9th Cir. 2006). Forced conscription may, however, constitute persecution

when wielded against a petitioner in certain ways. Fedorov asserted three distinct claims arising from forced conscription at various stages before the IJ, the BIA, and this Court, but none were properly exhausted or preserved.

*First*, forced conscription may constitute persecution when the petitioner is targeted for conscription based on a protected ground. *See Melkonian v. Ashcroft*, 320 F.3d 1061, 1068–69 (9th Cir. 2003) (concluding that attempt to forcibly recruit petitioner was "properly labeled 'on account of' his ethnicity" where army "specifically targeted *Armenian* men to conscript and send to the front line"); *see also Movsisian v. Ashcroft*, 395 F.3d 1095, 1097 (9th Cir. 2005) (holding that petitioner failed to establish persecution where he "presented no evidence that the Armenian government would target him for conscription . . . on account of his religion or other protected ground"). Fedorov's specific-targeting claim is unexhausted. *See* 8 U.S.C. § 1252(d)(1); *Santos-Zacaria v. Garland*, 598 U.S. 411, 419 (2023). Fedorov did not assert this claim before the IJ or the BIA, and neither the IJ nor the BIA addressed it.

*Second*, forced conscription may constitute persecution when the petitioner may be made to participate in "inhuman conduct"—that is, conduct condemned by the international community as contrary to the basic rules of human conduct. *See Barraza Rivera v. INS*, 913 F.2d 1443, 1451 (9th Cir. 1990); *Ramos-Vasquez v. INS*, 57 F.3d 857, 863–64 (9th Cir. 1995) ("If a soldier deserts in order to avoid

participating in acts condemned by the international community as contrary to the basic rules of human conduct, and is reasonably likely to face persecution should he return to his native country, his desertion may be said to constitute grounds for asylum based on political opinion."); *Tagaga v. INS*, 228 F.3d 1030, 1034–35 (9th Cir. 2000) (observing that it is "well established . . . that a government may not legitimately punish an official for refusing to carry out an inhumane order" and holding that petitioner's "unwillingness to participate in the race-based arrest and detention of Indo-Fijians" established a well-founded fear of future persecution). Fedorov's inhuman-conduct claim is also unexhausted, as Fedorov did not assert it before the IJ or the BIA, and neither the IJ nor the BIA decided it. The IJ's passing reference to "inhumane conduct" does not suffice to show that the IJ actually considered the claim; the IJ appeared to be considering the claim that Fedorov would face severe and disproportionate punishment for evading conscription.

*Third*, punishment for evading mandatory military service may constitute persecution when it is severe and disproportionate. *See Zehatye*, 453 F.3d at 1188 (recognizing that persecution may be established based on evidence that petitioner "would be singled out for severe disproportionate punishment for refusing to serve" in the military). Fedorov's severe-and-disproportionate-punishment claim is forfeited. In his immigration proceedings, Fedorov argued that he would face severe and disproportionate punishment for refusing to serve in the military. Both

the IJ and BIA concluded, however, that any such punishment was speculative. Because Fedorov does not challenge those findings in his petition before us, he has forfeited the claim. *See Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1023 (9th Cir. 2023).

Thus, substantial evidence supports the BIA's determination that Fedorov is not entitled to asylum or withholding of removal.

3. Substantial evidence supports the BIA's determination that Fedorov is not eligible for CAT relief. To qualify for CAT protection, Fedorov must show it is "more likely than not that he . . . would be tortured if removed to" Russia. 8 C.F.R. § 208.16(c)(2). Fedorov's only contention related to torture is that he will be sent to war if he is returned to Russia, which would be "a form of [psych]ological torture" for a religious pacifist like him. Even assuming mandatory military service could constitute "torture," the record does not compel a finding that it is more likely than not that Fedorov will be sent to war if removed to Russia. *See Medina-Rodriguez v. Barr*, 979 F.3d 738, 751 (9th Cir. 2020).

4. The BIA did not abuse its discretion in denying Petitioners' motion to reopen. *First*, the BIA did not abuse its discretion in concluding that Petitioners were afforded due process during their merits hearing. Because Petitioners do not allege that the interpreter was a non-governmental employee, they cannot establish a due process claim based on a violation of 8 C.F.R. § 1003.22. *See United States*

*v. Calles-Pineda*, 627 F.2d 976, 978 (9th Cir. 1980). Petitioners also fail to explain how any purported translation errors affected the outcome of the proceeding. *See Vilchez v. Holder*, 682 F.3d 1195, 1199–1200 (9th Cir. 2012). *Second*, the BIA did not abuse its discretion in concluding that Olga Efimova, Fedorov's former attorney, did not provide ineffective assistance of counsel. Unlike in her other asylum cases, Efimova's apparent mistakes or misjudgments in Petitioners' case did not "prevent[]" them "from pursuing relief." *Hernandez-Ortiz v. Garland*, 32 F.4th 794, 802 (9th Cir. 2022); *see Singh v. Holder*, 658 F.3d 879, 886 (9th Cir. 2011). *Third*, the BIA did not abuse its discretion in concluding that Petitioners' new evidence, which suggests that the Russian "Military Commissariat" has been looking for Fedorov, did not warrant reopening. The BIA's opinion shows that it understood the new evidence to concern the Russian government's apparent attempt to conscript Fedorov and thus did not misinterpret the term.

   **PETITIONS DENIED.**[2]

   The stay of removal remains in place until issuance of the mandate.

---

[2] Petitioners' motion to remand and motion to expedite are denied as moot.