# United States Court of Appeals for the Federal Circuit

---

**SEAN A. KENDALL,**
*Claimant-Appellant*

**v.**

**DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

**DORIS LAUGHTON-SMITH,**
*Respondent*

---

2024-1230

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 21-5563, Judge William S. Greenberg.

---

Decided: March 31, 2026

---

KENNETH DOJAQUEZ, Carpenter Chartered, Topeka, KS, argued for claimant-appellant. Also represented by KENNETH M. CARPENTER.

EMMA E. BOND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by CLAUDIA BURKE, BORISLAV KUSHNIR, PATRICIA M.

McCarthy; Meghan Alphonso, Christa A. Shriber, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————————

Before Dyk, Linn, and Stark, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* Stark.

Concurring opinion filed by *Circuit Judge* Dyk.

Stark, *Circuit Judge*.

Sean A. Kendall appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming a determination of the Board of Veterans' Appeals ("Board") that the Veterans Affairs Office of General Counsel ("VA OGC") did not err in finding the attorneys fees Mr. Kendall received were unreasonable and, therefore, he had to repay the amount deemed excessive. Because 38 U.S.C. § 7263(d) deprives us of jurisdiction to review attorneys fees award decisions issued by the Veterans Court, we dismiss.

I

Mr. Kendall, an attorney, was appointed in September 2012 to serve as counsel for veteran Martin L. Smith in connection with Mr. Smith's claims for benefits from the Department of Veterans Affairs ("VA"). In accordance with 38 U.S.C. § 5904(c)(2), Mr. Kendall filed with the Secretary of the VA a fee agreement, which established that Mr. Smith would pay Mr. Kendall "a fee equal to 20 percent of the total amount of any past-due benefits awarded on the basis of [his] claim(s) with the [VA]." J.A. 28; *see also* 38 U.S.C. § 5904(c)(2) (noting that attorneys providing representation during VA proceedings "shall file a copy of any fee agreement . . . with the Secretary"). The agreement was structured so that any fee would "be paid by the VA directly to [Mr. Kendall] from any past-due benefits awarded on the basis of [Mr. Smith's] claim(s)." J.A. 28.

Mr. Kendall then filed, on behalf of Mr. Smith, a notice of disagreement ("NOD") challenging a January 2012 rating decision Mr. Smith had received from a regional office ("RO") of the VA.  The NOD asserted that "Mr. Smith disagrees with . . . the decision to rate him at 70 percent" service-connected disabled and argued that Mr. Smith was instead "entitled to a 100 percent rating for [his] disability."  J.A. 30.

Prior to Mr. Kendall's appointment, Mr. Smith had, in February 2012, made the same request on his own behalf; that is, he requested that the VA increase the 70% rating he had been granted in January 2012 to 100%, but he did so on a theory of total disability based on individual unemployability ("TDIU").  In October 2012, the VA granted Mr. Smith his requested 100% disability rating without referencing the NOD filed by Mr. Kendall.  As a result, Mr. Smith was awarded past due benefits totaling $33,374.00.

In November 2012, the VA determined that Mr. Kendall was entitled to attorneys fees in the amount of 20% of Mr. Smith's October 2012 award, less an assessment fee, for a total of $6,356.50.  However, the VA had "failed to withhold [such] fees" from the past-due benefits award it had made to Mr. Smith, resulting in an overpayment to Mr. Smith.  J.A. 42, 45.  Thus, the VA explained, it would pay Mr. Kendall the $6,356.50 he was owed under his agreement with Mr. Smith and would also "recoup the amount of the overpayment from [Mr. Smith's future] benefit payments."  J.A. 45; *see also* J.A. 56.

In September 2015, Mr. Smith filed a letter which was construed as a NOD regarding the attorneys fees determination, disputing the reasonableness of Mr. Kendall's fee. He filed this notice with the VA OGC.  In February 2017, the VA OGC agreed with Mr. Smith that Mr. Kendall's fee was unreasonable, given, among other factors, the limited time Mr. Kendall spent on Mr. Smith's case and that the benefits awarded were based on the TDIU theory Mr.

Smith had pressed upon the RO without Mr. Kendall's assistance.  Hence, the VA OGC reduced Mr. Kendall's fee to $623.44.  By this time, Mr. Smith had reimbursed the VA for the previously-identified amount of overpayment ($6,356.50), and this same amount had by then been conveyed to Mr. Kendall.  Accordingly, the VA OGC ordered Mr. Kendall to refund Mr. Smith $5,733.06 – that is, "the difference between the fee paid [$6,356.50] and the fee that ha[d] been determined to be reasonable [$623.44]."  J.A. 95.

Mr. Kendall challenged this determination at the Board, which affirmed the decision of the VA OGC.  He pressed the same challenge at the Veterans Court which, too, affirmed.  Mr. Kendall now appeals to us.[1]

## II

Our jurisdiction to review decisions of the Veterans Court is defined by statute.  Our principal statutory basis for such review is 38 U.S.C. § 7292(a).  We have summarized our appellate jurisdiction under § 7292(a) as limited to:

> (1) issues concerning the validity of statutes or regulations on which the decision of [the Veterans Court] depended; (2) issues of interpretation if [the Veterans Court] elaborated the meaning of a statute or regulation and the decision depended on that interpretation; (3) issues of validity or interpretation raised before [the Veterans Court] but not explicitly decided, if the decision would have been altered by adopting the position that was urged; and (4) other "relevant" questions of law.

---

[1]     Prior to oral argument, Mr. Kendall withdrew several arguments he had raised in his briefs.  These arguments are waived and, therefore, we do not address them.

*Forshey v. Principi*, 284 F.3d 1335, 1338 (Fed. Cir. 2002) (en banc), *superseded in part by statute*, Veterans Benefits Act of 2002, Pub. L. No. 107-330, 116 Stat. 2820.

It does not follow, however, that we necessarily have jurisdiction to review every question of law that comes within the scope of one or more of these four enumerated categories. This is because Congress may, and has, carved out exclusions to this general grant of jurisdiction. *See Carpenter v. Principi*, 327 F.3d 1371, 1374 (Fed. Cir. 2003) ("Section 7292 is a general grant of jurisdiction . . . . However, Congress has the power to mandate specific restrictions of that general grant of jurisdiction.").

Section 7263(d) is one such carveout; it precludes our review of fee-agreement decisions of the Veterans Court, and is dispositive here. Section 7263(d) provides:

> [T]he [Veterans] Court may affirm the finding or order of the Board and may order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable. *An order of the Court under this subsection is final and may not be reviewed in any other court.*

(emphasis added). This statutory language is plain and unambiguous and we are obligated to comply with it. *See Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1192 (Fed. Cir. 2004) ("If the statute is unambiguous, our inquiry is at an end; we must enforce the congressional intent embodied in that plain wording."). While the Veterans Court may review and alter, or affirm, a Board finding or order as to the propriety of a VA OGC determination on reasonableness or excessiveness of attorneys fees, an order of the Veterans Court doing so "is final and may not be reviewed in any other court," which must include this Court. 38 U.S.C. § 7263(d). That the Federal Circuit is within the scope of the prohibition of review by "any other court" follows from the indisputable facts that we are an "other court" and our court is vested with exclusive appellate

review of the Veterans Court (subject to review by the U.S. Supreme Court). *See* 38 U.S.C. § 7292(c) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section, and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision.").

We have previously held that, consistent with its unambiguous text, § 7263(d) deprives us of jurisdiction to review Veterans Court decisions regarding attorneys fee agreements. In *Carpenter v. Principi*, 327 F.3d 1371, 1374 (Fed. Cir. 2003), we observed: "Congress has chosen explicitly to carve out, from the scope of this court's review, determinations by the Veterans' Court of the reasonableness of fee agreements between veterans and their attorneys." *Id.* We added:

> Section 7263(d) provides that when the Veterans' Court either reviews the determination of the Board of Veterans' Appeals as to the reasonableness of a fee under section 5904(c)(2) or conducts its own *sua sponte* review of a fee agreement filed with the court under section 7263(c), the resulting order of the Veterans' Court "is final and may not be reviewed in any other court."

*Id.*

### III

Mr. Kendall argues that we may, nonetheless, entertain his appeal because he does not ask that we review the determination of unreasonableness of his fees but, rather, he challenges the Veterans Court's interpretation of the regulation pursuant to which that review was undertaken. Specifically, he asserts that 38 C.F.R. § 14.636(f)'s provision that the presumptive reasonableness of a 20% fee may be rebutted by clear and convincing evidence (i.e., that such

a fee is not reasonable) is invalid because it is inconsistent with 38 U.S.C. § 5904(a)(5), which provides in part: "A fee that does not exceed 20 percent of the past due amount of benefits awarded on a claim shall be presumed to be reasonable." Hence, according to Mr. Kendall, this case comes within our jurisdiction to review questions of law under § 7292(a).

We rejected essentially this very argument in *Carpenter*. *See* 327 F.3d at 1374 ("Carpenter argues we may take jurisdiction of this appeal pursuant to our power to review questions of law under section 7292. We do not agree."). There, as we have already pointed out, we explained that "Congress has the power to mandate specific restrictions of th[e] [section 7292] general grant of jurisdiction" and "[t]hat is precisely what Congress has done in enacting section 7263(d)." *Id.* Mr. Carpenter, like Mr. Kendall here, "ask[ed] us to hold that the general jurisdictional grant of section 7292 trumps the specific jurisdictional exclusion of section 7263(d)." *Id.* We found no basis in *Carpenter* to do so and we reach the same conclusion today. Thus, we reiterate our reasoning in *Carpenter*:

> "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974). We must presume that Congress intended both provisions to be effective, especially when they are part of the same legislative act. *Id.* at 551 ("[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.").

*Id.* (alteration in original).

We then expressly held in *Carpenter*, based on "the congressional intent apparent both from the plain meaning of the terms of section 7263(d) and from its legislative

history," that "when the Veterans' Court makes a determination as to the reasonableness of a fee agreement, either in the first instance or on review of a determination by the Board, this court has no jurisdiction to review the resulting order of the Veterans' Court." *Carpenter*, 327 F.3d at 1375. The preclusion of appellate review of the Veterans Court's order extended in *Carpenter* to Mr. Carpenter's "challenge[s] [to] the Veterans' Court's interpretation of certain statutory provisions that the court relie[d] on in its decision." 327 F.3d at 1374.

As we must, we reach the same conclusion here. *See Deckers Corp. v. United States*, 752 F.3d 949, 959 (Fed. Cir. 2014) (holding that panels are bound by prior precedential decisions). The Veterans Court, by affirming the VA OGC and the Board, made a determination as to the reasonableness of Mr. Kendall's fee. This court, then, "has no jurisdiction to review the resulting order of the Veterans' Court." *Id.* The prohibition on appellate review of the Veterans Court's fee order extends to Mr. Kendall's legal challenges to the Veterans Court's interpretation of related statutes, such as 38 U.S.C. § 5904(a)(5), and validity of the VA's related regulations, including 38 C.F.R. § 14.636(f). Both the plain language of section 7263(d) and the binding precedential effect of *Carpenter* compel this result.

IV

Mr. Kendall additionally suggests that § 7263(d) and *Carpenter* do not deprive us of jurisdiction over his appeal because the Veterans Court order he is challenging was not issued under § 7263(d). To reach this conclusion, Mr. Kendall argues that the Veterans Court's review in this case was pursuant to some authority other than 38 U.S.C. § 5904(c)(2). We disagree. At every stage, the issue in this case remained the reasonableness of a fee agreement filed under § 5904(c)(2), precisely the category of cases § 7263(d) addresses.

The requirement for Mr. Kendall to file his fee agreement with the VA is established by 38 U.S.C. § 5904(c)(2), and the mechanism for VA OGC to review the reasonableness of any fee paid pursuant to such an agreement is set out in 38 U.S.C. § 5904(c)(3)(A). Consistent with this statutory structure, both the VA OGC and the Board expressly invoked 38 U.S.C. § 5904(c)(3)(A), as well as 38 C.F.R. § 14.636, in conducting their reasonableness reviews. J.A. 86, 90-91, 145-46, 150-51. The Board additionally noted that in pressing his appeal to the Board, Mr. Kendall relied on § 5904. J.A. 159. From all this, it follows that the order Mr. Kendall appeals from was issued under § 5904(c), reviewed by the Board under § 5904(c)(2), and further reviewed by the Veterans Court pursuant to § 7263(d), which explicitly grants the Veterans Court the ability to "review[] a fee agreement . . . under section 5904(c)(2) of this title." Thus, just as in *Carpenter*, 327 F.3d at 1375, "[b]ecause the Veterans' Court acted under section 7263(d), and because section 7263(d) precludes our review of the Court's order under that section, we are without jurisdiction to consider [this] appeal."

Mr. Kendall counters that the Veterans Court could not have acted under § 7263(d) because amendments made to § 5904 in 2006 effectively overruled *Carpenter*. He writes:

However, after this Court's decision in *Carpenter* Congress amended § 5904. Section 5904(c)(2) now no longer authorizes the Board in the first instance to review the fee called for in a fee agreement. In 38 U.S.C. § 5904(c)(3) Congress repealed the Board's *sua sponte* jurisdiction to review a fee agreement required to be filed under the amended § 5904(c)(2). Instead, Congress delegated that responsibility to the Secretary and the Secretary's decisions are then subject to review by the Board. Mr. Kendall acknowledges that Congress did not amend § 7263(d). However, it is evident that the

review in this appeal does not seek or require re-
view under § 5904(c)(2).

Reply Br. at 3.

Mr. Kendall seems to be arguing that because
§ 5904(c)(3)(B) indicates that Board review of the Secre-
tary's fee-reasonableness determination proceeds "under
section 7104 of this title," and because § 7104 is the Board's
primary jurisdictional grant, the Board here acted under
§ 7104 rather than under § 5904(c). From that premise, he
appears to contend that the Veterans Court acted under its
general jurisdictional grant in 38 U.S.C. § 7252(a), so this
Court has jurisdiction to review the Veterans Court's deci-
sion under § 7252(c). *See* 38 U.S.C. § 7252(c) ("Decisions
by the [Veterans] Court [under § 7252(a)] are subject to re-
view as provided in section 7292."). This argument lacks
merit.

As Mr. Kendall acknowledges, there has been no
amendment to § 7263(d), which continues to unambigu-
ously carve out from our jurisdiction any authority to re-
view an order of the Veterans Court issued "[i]n reviewing
a fee agreement under subsection (c) of this section or un-
der section 5904(c)(2) of this title." Congress' 2006 amend-
ments to § 5904(c), which shifted the initial
fee-reasonableness review from the Board to the Secretary
and authorized Board appellate review, did not alter the
text of § 7263(d) nor its jurisdiction-stripping effect. Re-la-
beling the Board's action as one under § 7104 does not
change the statutory fact that the VA OGC's order was en-
tered "under section 5904(c)(2)" within the meaning of §
7263(d).

Accepting Mr. Kendall's theory would effectively read
§ 7263(d) out of the U.S. Code. On his view, any Veterans
Court review of a fee-agreement order always arises under
§ 7252 rather than § 7263(d), meaning the Veterans Court
*never* acts pursuant to § 7263(d). Mr. Kendall's position

would leave § 7263(d) with no work to do, thereby reducing it to a nullity.[2]

We will not lightly presume such a "repeal[] by implication."[3]  *Morton*, 417 U.S. at 549-50  (internal quotation

---

[2]    Similarly, interpreting § 7263(d)'s prohibition on review of attorneys' fees orders as limited to precluding review of factual assessments would likewise render § 7263(d) superfluous, as § 7292(a) already deprives us of jurisdiction to review questions of fact or the application of law to fact. *See Forshey*, 284 F.3d at 1338.  The concurrence suggests that redundancies in statutes are not uncommon, Concurrence at 10, but in each of the cases it cites the surplusage canon either did not apply or did no meaningful work. *See Barton v. Barr*, 590 U.S. 222, 239 (2020) (noting that "under either side's interpretation" there "is redundant surplusage"); *Arlington Cent. Sch. Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 299 n.1 (2006) (finding independent explanation for redundant language that made resort to surplusage canon unnecessary); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("While courts should disfavor interpretations of statutes that render language superfluous, in this case that canon does not apply."); *Dir. of OPM v. Moulton*, 155 F.4th 1331, 1337 (Fed. Cir. 2025) (rejecting surplusage argument in part because other proposed interpretation had its "own superfluity problems"). Our case, by contrast, is one where our "interpretation gives effect to every clause and word of a statute" while a competing interpretation does not. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 106 (2011).  In such a case, "the canon against superfluity assists." *Id.*

[3]    "There are two well-settled categories of repeals by implication – (1) Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the

marks omitted).  Rather, in order to find such an implicit repeal, "the intention of the legislature to repeal must be clear and manifest." *Posadas*, 296 U.S. at 503.  This is especially true where the purported implicit repeal would affect jurisdiction.  *See Rosencrans v. United States*, 165 U.S. 257, 262 (1897) ("When there are statutes clearly defining the jurisdiction of the courts the force and effect of such provisions should not be disturbed by a mere implication flowing from subsequent legislation.  In other words, where Congress has expressly legislated in respect to a given matter that express legislation must control, in the absence of subsequent legislation equally express, and is not overthrown by any mere inferences or implications to be found in such subsequent legislation."); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 808 (1976) (same).  Additionally, when "[p]resented with two statutes, [a] Court will regard each as effective – unless Congress' intention to repeal is clear and manifest or the two laws are irreconcilable." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 315 (2020) (internal quotation marks omitted).

The amendments to § 5904 do not provide the required "clear and manifest" evidence of Congressional intent to repeal § 7263(d), especially considering that a contrary reading would alter (by mere implication) our jurisdiction.  Instead, the amendment to § 5904(c)(3)(B) simply specifies that the Board has appellate authority to review the Secretary's fee-agreement determination and that, in exercising that authority, the Board acts within the procedural

---

conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act." *Posadas v. Nat'l City Bank of New York*, 296 U.S. 497, 503 (1936).

framework set out in § 7104.[4] The Board's jurisdiction in this narrow category is conferred by § 5904(c)(3)(B); the cross-reference to § 7104 describes the manner of that review, not a change in the statutory source of jurisdiction. *See Bulova Watch Co. v. United States*, 365 U.S. 753, 758 (1961) ("[I]t is familiar law that a specific statute controls over a general one."). Reading § 5904(c)(3)(B) this way appropriately harmonizes it with § 7263(d) and preserves the latter's function. *See Me. Cmty. Health Options*, 590 U.S. at 315.[5]

Thus, we are unpersuaded by Mr. Kendall's efforts to show that § 7263(d)'s prohibition on review of Veterans Court orders issued in reasonableness of attorneys fees appeals is inapplicable. We lack jurisdiction over this appeal.

V

We recognize, as our concurring colleague thoughtfully expounds (although Mr. Kendall does not raise), there exists a "strong presumption that Congress intends judicial review of administrative action," including with respect to

---

[4]    Such cross-references to § 7104 for procedural purposes are found in other statutes as well. *See e.g.*, 38 U.S.C. § 7266(a) ("[A] person adversely affected by such decision shall file a notice of appeal with the [Veterans] Court within 120 days after the date on which notice of the decision is issued pursuant to section 7104(e) of this title.").

[5]    While the VA OGC's decision concludes by noting it "is appealable by either Mr. Smith or Mr. Kendall to the Board under 38 U.S.C. § 7104," J.A. 96, that statement does not (and could not) alter the fact that § 7104 simply supplies the general procedural framework for Board decisions, and that at all times authority to review attorneys fees determinations (by VA OGC, the Board, and the Veterans Court) arises from § 5904(c)(3)(B).

14                                    KENDALL v. COLLINS

veterans issues. *Traynor v. Turnage*, 485 U.S. 535, 542 (1988) (internal quotation marks omitted). That presumption, however, may be rebutted "upon a showing of 'clear and convincing evidence' of a contrary legislative intent," which may be established by way of "specific language or specific legislative history that is a reliable indicator of congressional intent, or a specific congressional intent to preclude judicial review that is fairly discernable in the detail of the legislative scheme." *Id.* (internal quotation marks omitted). We have such evidence here, in the clear, unambiguous, and narrow language of § 7263(d): "An order of the [Veterans] Court under this subsection is final and *may not be reviewed in any other court*" (emphasis added). Where a jurisdiction-stripping statute "clearly expresses Congress's desire to preclude judicial review . . . we have no reason to resort to the presumption of reviewability." *Bouarfa v. Mayorkas*, 604 U.S. 6, 19 (2024). We additionally observe it has now been more than two decades since we issued *Carpenter* and, while Congress has in the intervening years enacted amendments to related statutes (such as § 5904), it has not amended or repealed § 7263(d). *See Ryan v. Gonzalez*, 568 U.S. 57, 66 (2013) ("We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent.") (internal citation omitted).

Unlike broader jurisdiction-stripping statutes the Supreme Court effectively narrowed by invoking the presumption of reviewability, *see Traynor*, 485 U.S. at 541, 543-44 (narrowly construing broad prohibition on judicial review – contained in 38 U.S.C. § 211(a) (now repealed) – of "any question of law or fact concerning a claim for benefits or payments under any law administered by the [VA]" to not preclude review of legal questions arising under statutes not enforced exclusively by VA); *Johnson v. Robison*, 415 U.S. 361, 367 (1974) (construing same broad prohibition narrowly to permit judicial review of constitutional claims), § 7263(d) is a targeted provision precluding our review of one category of orders, enacted in response to a

specific legislative concern that appellate courts lack the factfinding capacity to revisit fee-reasonableness determinations, *see Judicial Review Legislation: Hearing on S. 11 Before the Comm. on Veterans' Affs.*, 100th Cong. 44 (1988) (citing testimony of Judge Stephen Breyer).[6]  Within that targeted scope, Congress drew no distinction between factual and legal challenges: the Veterans Court's order simply "may not be reviewed in any other court."  38 U.S.C. § 7263(d); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998) ("[I]t is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.").  Where, as here, Congress enacted a targeted bar directed at a specific determination, and the challenge before us falls within that determination's core, there is no further narrowing work to be done by application of the presumption of reviewability. *Compare Traynor*, 485 U.S. at 543-44 (narrowing broad prohibition on judicial review) *and Robison*, 415 U.S. at 367 (same), *with Cuozzo*, 579 U.S. at 274-75 (upholding narrow bar on appeals of "determinations . . to initiate an inter partes review *under this section*").

Thus, again, we conclude that we lack jurisdiction over Mr. Kendall's appeal.

---

[6]    Like the Supreme Court in *Cuozzo Speed Techs. LLC v. Lee*, 579 U.S. 261, 275 (2016), here we do not say (and are not asked to decide) "the precise effect" § 7263(d) may have "on appeals that implicate constitutional questions" or that "present other questions of interpretation that reach, in terms of scope and impact, well beyond [attorneys fees orders]."  While our concurring colleague suggests we are closing the door to review of constitutional matters, *see* Concurrence at 10, we are expressly declining to address that question, as it is not presented in this case.

16                                          KENDALL v. COLLINS

## VI

We have considered Mr. Kendall's remaining argu-ments and find them unpersuasive.  Accordingly, for the foregoing reasons, we dismiss this appeal.

**DISMISSED**

COSTS

Each party to bear its own costs.

# United States Court of Appeals for the Federal Circuit

---

**SEAN A. KENDALL,**
*Claimant-Appellant*

**v.**

**DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

**DORIS LAUGHTON-SMITH,**
*Respondent*

---

2024-1230

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 21-5563, Judge William S. Greenberg.

---

DYK, *Circuit Judge*, concurring.

I agree with the majority that *Carpenter v. Principi*, 327 F.3d 1371 (Fed. Cir. 2003), dictates the outcome of this case. I also agree with the majority that 38 U.S.C. § 7263(d) was not implicitly repealed. However, I respectfully suggest that *Carpenter* was wrongly decided. *Carpenter* failed to consider—indeed, it made no reference to—the presumption in favor of judicial review, a presumption "that we apply when we interpret statutes, including statutes that may limit or preclude review." *Cuozzo Speed*

*Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016) (citing *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015)).  The text of section 7263(d), its specific legislative history, and the statutory scheme as a whole do not provide the required "'clear and convincing' indications" that Congress intended to bar review of all issues related to the reasonableness of attorneys' fees in veterans' benefits cases.  *Id.* at 273.  In particular, there is no evidence that Congress intended to bar review as to the validity and interpretation of rules set forth in statutes and regulations or constitutional issues.  Under the majority's decision, for example, a regulation that would bar non-attorney agents from recovering fees from their clients would not be subject to judicial review, even though fee agreements between veterans and non-attorney agents are expressly contemplated by 38 U.S.C. § 5904.

I

"Before 1988, a veteran whose claim was rejected by the VA was generally unable to obtain further [judicial] review," and the veteran's avenues for relief were typically confined to the veterans' claims process.  *Henderson v. Shinseki*, 562 U.S. 428, 432 (2011); *see* 38 U.S.C. § 211(a), Pub L. No. 85-857, 72 Stat. 1105, 1115 (1958) (repealed 1988) ("section 211(a)") (aside from certain exceptions, "the decisions of the Administrator on any question of law or fact concerning a claim for benefits or payments under any law administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision").  The administrative review process was "designed to function throughout with a high degree of informality and solicitude for the claimant." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 311 (1985).  To respect the informal nature of the claims process and to limit the ability of attorneys to profit from veterans' claims, Congress limited the fees an attorney could recover from a veteran in the claims process to $10.

38 U.S.C. § 3404(c), Pub L. No. 85-857, 72 Stat. 1105, 1239 (1958) (amended 1988).

The Veterans' Judicial Review Act of 1988 ("VJRA") changed this system and created a structure for judicial review of veterans' benefits claims. When creating this new structure, Congress allowed attorneys to charge reasonable fees for representation of a veteran before the Board and Veterans Court after the Board first makes a final decision in the veteran's case. 38 U.S.C. § 3404(c)(1), Pub L. No. 100-867, 102 Stat. 4105, 4108 (1988). To "provide protection against any overreaching on the part of attorneys," Congress gave the Board and Veterans' Court authority to review attorneys' fee agreements. 134 Cong. Rec. S31470 (1988) (statement of Senator Alan Cranston). Thus, the Board and Veterans Court could review "each fee agreement" and "reduce the fee called for if [they] find [ ] that the fee is excessive or unreasonable." 38 U.S.C. § 3404 (1988), Pub L. No. 100-867, 102 Stat. 4105, 4108 (1988).

Some expressed concern, however, that review of fee reasonableness decisions could vex the appellate court with factually intensive inquiries. Testifying on behalf of the Judicial Conference, Judge (later Justice) Breyer and Judge Arnold "stressed the desirability of limiting the amount of court time and involvement in deciding attorneys' fees." 134 Cong. Rec. S31469 (1988). Judge Breyer predicated his apprehension to court involvement on attorneys' fees issues due to the fact-intensive nature of such determinations, as he stated "[i]t is difficult for Courts of Appeals to resolve any contested issues involved in matters of this sort, as those courts lack factfinding procedures." *Judicial Review Legislation: Hearing on S. 11 Before the Comm. on Veterans' Affs.*, 100th Cong. 44 (1988) (testimony of Judge Stephen Breyer).[1] In an apparent effort to

---

[1]    Judge Breyer specifically mentioned the difficulty in reviewing agency factfinding that was necessary for

address these concerns, the statute as enacted provided that only the Board and Veterans Court may assess the reasonableness of attorneys' fees agreements and such orders "may not be reviewed in any other court."  38 U.S.C. § 7263(d).  The majority agrees that "a specific legislative concern that appellate courts lack the factfinding capacity to revisit fee-reasonableness determinations" was the purpose of section 7263(d).  Majority Op. 14–15.

We considered section 7263(d) in *Carpenter v. Principi*, 327 F.3d 1371 (Fed. Cir. 2003).  *Carpenter* concerned an appeal of a Veterans Court decision of the reasonableness of a fee agreement in which the Veterans Court held that "a fee which includes both an [Equal Access to Justice Act] award plus a contingency fee for work performed before the Court, Board, and VA on the same claim such that the fee is enhanced by an EAJA award is unreasonable pursuant to 38 U.S.C. §§ 5904(c) and 7263." *Carpenter v. Principi*, 15 Vet. App. 64, 76 (2001), *overruled by Ravin v. Wilkie*, 31 Vet. App. 104 (2019).  On the merits, the case involved issues of statutory interpretation. *Carpenter*, 327 F.3d at 1374.  We dismissed the appeal for lack of jurisdiction, concluding that section 7263(d) barred review of the Veterans Court's decision because it tied its statutory EAJA offset holding to the ultimate determination of whether the attorney's fee agreement was reasonable. *Carpenter*, 327 F.3d at 1375.  *Carpenter* addressed whether "the general jurisdictional grant of section 7292 trumps the specific jurisdictional exclusion of section 7263(d)." *Id.* at 1374.  But, in doing so, it did not apply or even reference the longstanding "'strong presumption'" of judicial review to the Veterans

---

attorneys' fee determinations in the social security context. *Judicial Review Legislation: Hearing on S. 11 Before the Comm. on Veterans' Affs.*, 100th Cong. 43 (1988) (testimony of Judge Stephen Breyer).

Court decision. *Cuozzo*, 579 U.S. at 273 (quoting *Mach Mining*, 575 U.S. at 486).

Since *Carpenter*, both the ability for attorneys to recover fees in their representation of veterans before the VA and the VA's authority to regulate attorneys representing veterans have expanded. In the Veterans Benefits, Health Care, and Information Technology Act of 2006, Pub. L. No. 109–461, 120 Stat. 3403 (2006) ("2006 amendments"), Congress revisited an attorney's ability to charge a veteran fees before the veteran received a final decision from the Board and revised section 5904 to allow for attorneys to charge fees beginning when a notice of disagreement is filed. 38 U.S.C. § 5904(c)(1), Pub. L. No. 109–461, 120 Stat. 3403, 3407 (2006). The 2006 amendments gave the VA Secretary the authority to "review a fee agreement" between an attorney and a veteran and "order a reduction in the fee called for in the agreement if the Secretary finds that the fee is excessive or unreasonable." 38 U.S.C. § 5904(c)(3)(A). Relevant here, Congress in 2006 delegated to the VA the authority to "prescribe in regulations reasonable restrictions on the amount of fees that an agent or attorney may charge a claimant for services rendered in the preparation, presentation, and prosecution of a claim before the Department." 38 U.S.C. § 5904(a)(5).[2] Appellant in this case challenges the validity of one of those

---

[2]    Prior to the 2006 amendments, the VA prescribed some regulations related to the Board's adjudication of attorneys' fees reasonableness disputes pursuant to its general rulemaking authority under 38 U.S.C. § 501. *See* 38 C.F.R. § 20.609 (2002) (revoked 2008). The challenged regulation here, which allows for the presumption of reasonableness that attaches to a 20% contingency fee to be rebutted, was prescribed in 2008 pursuant to the newly amended section 5902–04, not section 501.

regulations, arguing that the regulation is inconsistent with section 5904.

## II

"Congress rarely intends to prevent courts from enforcing its directives to federal agencies." *Mach Mining*, 575 U.S. at 486. Accordingly, there is a "'strong presumption' in favor of judicial review that we apply when we interpret statutes, including statutes that may limit or preclude review." *Cuozzo*, 579 U.S. at 273 (quoting *Mach Mining*, 575 U.S. at 486). "This presumption . . . may be overcome by 'clear and convincing' indications, drawn from 'specific language,' 'specific legislative history,' and 'inferences of intent drawn from the statutory scheme as a whole,' that Congress intended to bar review." *Id.* (quoting *Block v. Comm. Nutrition Inst.*, 467 U.S. 340, 349–50 (1984)).

In my view, such clarity is missing here. In other words, Congress did not intend to preclude judicial review of regulations establishing standards for determining the reasonableness of attorneys' fees. The relevant Supreme Court cases in the veterans' benefits context support this result. *Johnson v. Robison*, 415 U.S. 361 (1974); *Traynor v. Turnage*, 485 U.S. 535 (1988). In those cases, the Supreme Court held that, although section 211(a) stated "no other official or any court of the United States shall have power or jurisdiction to review" veterans' benefits decisions, 38 U.S.C. § 211(a) (1958), federal courts nevertheless had jurisdiction to consider certain legal challenges. In *Johnson v. Robison*, a veteran challenged the constitutionality of veterans' benefits legislation that required rejection of his application for veterans' education benefits due to his status as a conscientious objector. *Robison*, 415 U.S. at 363–66. The Supreme Court declined to adopt the government's argument that his challenge was barred under section 211(a) as an appeal of a veterans' benefits decision. *Id.* at 366. In holding that the constitutionality

of the veterans' benefit statute was subject to judicial review, the Supreme Court concluded that "no explicit provision of [section] 211(a) bars judicial consideration of appellee's constitutional claims," *id.* at 367, and that the legislative history of the provision reflected two primary purposes that would not be disturbed by judicial review of the individual's constitutional challenge: "an inevitable increase in litigation with consequent burdens upon the courts and the Veterans' Administration" and "involv[ing] the courts in day-to-day determination and interpretation of Veterans' Administration policy." *Id.* at 371–72.

Likewise, in *Traynor v. Turnage*, the Supreme Court held that section 211(a) did not bar judicial review of a VA regulation that the petitioners alleged was invalid because it violated the Rehabilitation Act. *Traynor*, 485 U.S. at 545. There, the Supreme Court reiterated that there is a "strong presumption that Congress intends judicial review of administrative action." *Id.* at 542 (quoting *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986)). The Supreme Court reasoned that "[s]ection 211(a) [only] insulates from review . . . decisions made in interpreting or applying a particular provision of [the Rehabilitation Act] to a particular set of facts," and therefore it did not bar the veterans' challenge as to the validity of a regulation. *Id.* at 543. In addition, the Supreme Court concluded that its interpretation did not conflict with the purposes of section 211(a) that it outlined in *Robison*, as:

> [i]t cannot be assumed that the availability of the federal courts to decide whether there is some fundamental inconsistency between the Veterans' Administration's construction of veterans' benefits statutes, as reflected in the regulation at issue here, and the admonitions of the Rehabilitation Act will enmesh the courts in 'the technical and complex determinations and applications of Veterans' Administration policy connected with veterans' benefits decisions' or 'burden the courts and the

Veterans' Administration with expensive and time-consuming litigation.'

*Id.* at 544 (quoting *Robison*, 415 U.S. at 370).[3]

The same is true here. To be sure, the text and legislative history of section 7263(d) demonstrate Congress's clear intent to preclude our review of fact-intensive reasonableness of attorneys' fees assessments in particular cases and the resulting order from those assessments. But, as in *Robison* and *Traynor*, allowing judicial review of the interpretation and validity of a regulation in the attorneys' fees context will not "enmesh the courts in . . . 'technical and complex determinations and applications of Veterans' Administration policy' . . . or 'burden the courts and the Veterans' Administration with expensive and time-consuming litigation.'" *Traynor* at 544 (quoting *Robison*, 415 U.S. at 370).

## III

The majority's attempt to support *Carpenter* is unsuccessful. Relying on the language "[a]n order of the [Veterans] Court under this subsection is final and *may not be reviewed in any other court*," Majority Op. 14 (quoting 38 U.S.C. § 7263(d) (emphasis in original)), it concludes "the clear, unambiguous, and narrow language of § 7263(d)" bars review. Majority Op. 14. But similar language stating that "<u>no other official or any court of the United States shall have power or jurisdiction to review</u> any [veterans' benefits] decision," 38 U.S.C. § 211(a) (1958), in *Robison* and *Traynor*, was not found to bar review of constitutional issues and issues as to the validity of regulations. *See Robison*, 415 U.S. at 371–74; *Traynor*, 485

---

[3]    Both *Robison* and *Traynor* were cited with approval in the Supreme Court's more recent decision in *Cuozzo Speed Technologies, LLC v. Lee*, 579 U.S. 261, 275 (2016).

U.S. at 545. Similar language in other cases was held not to bar review of the validity of regulations and other legal and procedural challenges. *See Bowen*, 476 U.S. at 679–81 (determining that although 42 U.S.C. § 405(h) provided that "[t]he findings and decision of the Secretary after a [Part B award] hearing shall be binding upon all individuals who were parties to such hearing" and that "[n]o findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided," the statute did not preclude review of "challenges to the validity of the Secretary's instructions and regulations" related to Medicare Part B awards); *Lindahl v. OPM*, 470 U.S. 768, 771, 779–80 (1985) (provision stating "the decisions of the Office [of Personnel Management] concerning [questions of disability and dependency] are final and conclusive and are not subject to review" only barred review of factual determinations underlying disability determination and did not bar review of alleged legal and procedural errors (citing 5 U.S.C. § 8347(c)). The majority also does not consider the legislative history of section 7263(d) or the statutory scheme as a whole, which suggest only a limited restriction on the scope of review.

Attempting to distinguish the "broader jurisdiction-stripping statutes" in *Robison* and *Traynor*, the majority suggests that this case is different because "here, Congress enacted a targeted bar directed at a specific determination, and the challenge before us falls within that determination's core." Majority Op. 14–15. This seems to me to be incorrect. There is no evidence that Congress enacted a "targeted bar" on review of regulations prescribed by the Secretary. In fact, the evidence is clear that Congress did not. The Secretary was not given the power to "prescribe in regulations reasonable restrictions on the amount of fees" until after the enactment of the 2006 amendments, 38 U.S.C. § 5904(a)(5), which was eight years after Congress last reenacted section 7263(d). Nor did the legislative history of the 2006 amendments suggest a desire to bar

judicial review of regulations related to the Board's attorneys' fees reasonable determinations that existed before 2006. In any event, the agreed focus on the jurisdictional bar was to prevent appellate courts from engaging in fact-intensive determinations in individual cases. That purpose is not implicated by review of the validity of regulations.

The majority asserts that an interpretation of section 7263 that would allow review of constitutional issues and the validity and interpretation of statutes and regulations should be rejected because it "would . . . render § 7263(d) superfluous, as § 7292(a) already deprives us of jurisdiction to review questions of fact or the application of law to fact." Majority Op. 11 n.2 (citing *Forshey v. Principi*, 284 F.3d 1335, 1338 (Fed. Cir. 2002)). But "[r]edundancies across statutes are not unusual events in drafting." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). As the Supreme Court noted in *Barton v. Barr*, 590 U.S. 222 (2020), "redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication." *Barton*, 590 U.S. at 239; *see also Arlington Cent. Sch. Dist. Bd. of Ed. v. Murphy,* 548 U.S. 291, 299 n.1, (2006); *Dir. of OPM v. Moulton*, 155 F.4th 1331, 1337 (Fed. Cir. 2025).

The majority also suggests that Congress acquiesced to the *Carpenter* decision because "[i]t has now been more than two decades since we issued *Carpenter* and, while Congress has in the intervening years enacted amendments to related statutes (such as § 5904), it has not amended or repealed § 7263(d)." Majority Op. 14. The majority presents no authority for concluding that Congress ratified a judicial decision because it later enacted other statutes after the *Carpenter* decision. Indeed, the Supreme Court has recognized that it is a "requirement[ ] for congressional ratification" that Congress must "simply reenact

[the statute] without change." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 349 (2005).

To be clear, Congress did not enact or amend section 7263(d) after *Carpenter*, so there is no basis to conclude that Congress ratified *Carpenter*. *Ryan v. Gonzalez*, 568 U.S. 57, 66 (2013) ("'We normally assume that, when Congress <u>enacts</u> statutes, it is aware of relevant judicial precedent.'" (emphasis added) (quoting *Merck & Co. v. Reynolds,* 559 U.S. 633, 648 (2010)). Moreover, there is no indication that Congress was even aware of *Carpenter* or that the panel decision in *Carpenter* can be viewed as reflecting broad judicial consensus. *See Jama*, 543 U.S. at 349 (application of doctrine of congressional ratification requires "judicial consensus [that is] so broad and unquestioned that we must presume Congress knew of and endorsed it"); *see also Learning Res. Inc. v. Trump*, 146 S. Ct. 628, 644 (2026) (Although we "sometimes assume[ ] that Congress incorporates judicial definitions into legislation, we do so 'only when [the] term's meaning was well-settled' before the adoption" (quoting *Kemp v. United States*, 596 U.S. 528, 539 (2022) (internal quotations omitted))). Since *Carpenter* was decided, only one of our decisions has cited it, and no precedential decision of this court has followed it to bar review of an appeal under section 7263(d).

I respectfully disagree with the majority's conclusion that *Carpenter* is consistent with the presumption of judicial review, with the Supreme Court's cases, or with a proper interpretation of the statute.